House v. The Board of Comm'rs of Montgomery Co.

COUNTY.—*Repair of Bridges.*—*Duty of County Commissioners.*—It is made the imperative duty of the board of commissioners of a county in this State,

House v. The Board of Comm'rs of Montgomery Co.

.by statute, to cause all the bridges in the county to be kept in repair; and the board is also authorized to make all necessary appropriations from the county treasury, for that purpose.

SAME.—*Negligence.*—*Action for Damages for Injury.*—Where a board of commissioners of a county negligently suffers a bridge in such county to remain out of repair, whereby a person, in the ordinary use of the same, is injured in person or property without any fault of his own, he has an action for damages resulting to him from such injury, against such board. But such action is not authorized expressly by statute.

From the Montgomery Circuit Court.

*S. C. Willson* and *L. B. Willson,* for appellant.

*G. D. Hurley* and *B. Crane,* for appellee.

WORDEN, J.—This was an action by the appellant, against the appellee, to recover damages for alleged negligence on the part of the defendant, in suffering one of the bridges in the county to become out of repair, whereby a mule belonging to the plaintiff, in passing over the bridge, was injured, without fault or negligence on the part of the plaintiff.

There was a demurrer to the complaint, for want of sufficient facts, but it was overruled, and exception taken.

Issue, trial, and verdict for the plaintiff, but the judgment was arrested, on the ground that the county was not liable for damages in such case.

The appellant has assigned, as error, the order of the court arresting the judgment; and the appellee has also assigned error upon the overruling of the demurrer to the complaint.

Both assignments raise the same question, viz.: Whether the county is liable to respond in damages in such case. It is well settled, that a city would be liable in such case. *Grove* v. *The City of Fort Wayne,* 45 Ind. 429. This is not controverted by counsel for the appellee, but it is contended that a county stands upon different ground, in respect to liability. There is no statute that expressly gives the right of action in such case, against either a city or county. The right against a city grows out of the power conferred upon it over its streets

and bridges, and its duty to keep them in reasonable repair, having the power to raise means for that purpose. See the case above cited.

The question is one of first impression in this State, and must be tested by a consideration of the powers conferred, and the duties imposed, upon the board of commissioners by the laws of the State pertaining to the subject, with such aid as may be derived from the general principles and analogies of the law, and the decisions of other courts upon like questions.

The board of commissioners of a county is a body corporate and politic, and as such may prosecute and defend suits, and have all other duties, rights and powers incident to corporations, not inconsistent with the act providing for its organization. 1 R. S. 1876, p. 350, sec. 5.

The following, among other, powers are conferred upon the board:

" 2. To allow all accounts chargeable against such county, not otherwise provided for, and to direct the raising of such sums as may be necessary to defray all county expenses.

" 3. To audit the accounts of all officers having the care, management, collection, or disbursement of any money belonging to the county, or appropriated for its benefit; and,

" 4. To perform all other duties which may be enjoined on them by any law of this State." 1 R. S. 1876, p. 352, sec. 13.

Section 28 of the same act, 1 R. S. 1876, p. 356, provides, that, " When any judgment has been obtained against commissioners in their corporate capacity, the public property of the county shall be liable therefor; but the court rendering such judgment may, before the issuing of execution, allow such board reasonable time, if the same is necessary, to assess and collect a sufficient amount of revenue to pay and discharge such judgment, in addition to the ordinary expenses of the county."

The amount to be charged on each poll, and on each one hundred dollars' worth of property, for county expenditures, is to be determined by the board of county commissioners, at its annual meetings in June. 1 R. S. 1876, p. 72, sec. 1.

The first section of an act to provide for the erection and repair of bridges, etc., 1 R. S. 1876, p. 239, authorizes the board of commissioners to build and repair bridges over any water-course; and the second section authorizes that body to " make an appropriation from the county treasury to build or repair the same;" and the eleventh section provides, that " The board of commissioners of such county shall cause all bridges therein to be kept in repair."

It is thus seen, that the board of commissioners has ample power to build and repair bridges, and to make appropriations from the county treasury for that purpose, and that it may determine the amount of taxes to be levied for county expenditures, which includes expenditures for the building or repair of bridges where the same are built or repaired by the county; and that it is made the imperative duty of the board to cause all bridges in the county to be kept in repair.

The board is a body politic and corporate, and as such may sue and be sued, and ample provision is made for the collection of judgments rendered against it.

The obligation thus imposed upon the board, to cause all bridges in the county to be kept in repair, with ample power to provide means to discharge the obligation, carries with it a corresponding right in every one having occasion, in the usual course of travel, to use the bridges, to have the obligation fulfilled, and the bridges kept in repair. And it seems to us to follow, that where the board negligently suffers such bridge to be out of repair, whereby a person, in the ordinary use of it, is injured in person or property, without his own fault, he must have an action against the board for the damages; otherwise, there will be a wrong without a remedy.

It will not do to say, that the members of the board might be sued for the injury in such case, in their individual capacity, and therefore that the corporation could not be sued.

Without stopping to enquire whether the members of the board would or would not be liable as individuals, it seems to us, that a party thus injured could not be required to look for redress only to them as individuals. They might be unable to respond in damages. The wrong in such case is not the wrong of the members of the board as individuals. As individuals, they were under no obligation to keep the bridges in repair. The wrong done, in suffering the bridge to become out of repair, was the wrong of the corporation, and the corporation must be responsible therefor.

It is upon principles above stated, that cities are held liable for failing to keep their streets in repair, though no statute expressly provides for such liability; and in our opinion, the principles will apply as well to a county as a city.

We are aware that there is a diversity in the decisions in respect to the liability of a county in such case, there being, we may say, numerous cases holding against such liability. Many of the cases were decided upon statutes less decisive of the power and duty of the board of commissioners than our own. Other cases discriminate between counties and cities, and again others hold, that neither counties nor cities are liable for such neglect, in the absence of a statute making them so. Other cases hold, that a county is liable in such case, without any statute expressly providing for such liability. In this diversity in the decisions, we have felt at liberty to adopt and follow that line which seems to us to be most in accordance with the principles which should govern the question.

In the case of *Wilson & Gustin* v. *Jefferson County*, 13 Iowa, 181, a county was held liable in such case. The

court said, amongst other things, "the question recurs, to whom must the plaintiffs look for indemnity? We think the county. We think so because the county is charged with the duty of building and maintaining bridges, and even repairing them, when the requisite expenditure for doing so is large. This duty involves a corresponding obligation or liability to pay damages resulting from a neglect of the same. This rule is not only authorized and sanctioned by the analogies, but by the policy of the law, which requires that the travelling public should have some security for a safe passage over the bridges and highways of the country." To the same effect are the cases of *Brown* v. *Jefferson County*, 16 Iowa, 339; *Kendall* v. *Lucas County*, 26 Iowa, 395, and *Taylor* v. *Davis County*, 40 Iowa, 295.

In the case of *The County Commissioners of Anne Arundel County* v. *Duckett*, 20 Md. 468, a well considered case, it was held, "That the duties imposed by law upon the county commissioners being defined in the most comprehensive terms, and the law having supplied them with ample means, and armed them with coercive power sufficient to meet and sustain their liabilities, they are responsible for special damage resulting from the non-repair of the public roads by their officers, the road supervisors." The case was followed in the case of *The County Commissioners of Calvert County* v. *Gibson*, 36 Md. 229.

In the case of *Wheeler* v. *Troy*, 20 N. H. 77, it was held, that "It is the duty of towns to keep in repair the highways within their limits, and for neglect of such duty they are liable at common law, and independently of the statute giving an action to the party injured." We understand that "towns" in that State are equivalent, substantially, or similar, to townships here.

The court said in the case: "We are inclined, therefore, to the opinion that the general maxim of the common law, that he who is specially damaged by the breach of a duty on the part of another shall have his remedy

by action, is properly applicable to the case of one who
has received an injury through the neglect of a town to
repair its roads."

In *Dean* v. *New Milford Township*, 5 Watts & S. 545,
it was held, that "An action on the case will lie against a
township to recover damages for an injury sustained by
reason of the negligence of the supervisors to keep the
road in repair."

In the case of *Erie City* v. *Schwingle*, 22 Pa. State, 384,
the following language is found in the opinion of the court,
delivered by BLACK, C. J. : "The principal question in
this case is, whether a city corporation, bound by its
charter to keep its streets in repair, is liable for an injury
occasioned by neglect to do so.

"Every highway or thoroughfare, which the public has a
right to use, must be kept, by somebody, in such order
that it can be safely used, and if any serious injury hap-
pens to an individual in consequence of its bad condition,
those who are bound to repair must answer in damages."

After citing some authorities, the opinion proceeds:
"I have cited these several cases to show. that a party
bound to repair, whether it be an individual, a private
corporation, a township, district or city, must perform the
duty or pay, in an action on the case, for all injuries to
persons and property, which may be caused by the omis-
sion."

It is thus seen that the view which we have taken of
the question is well supported by authority.

The leading English case, on which most of the Amer-
ican cases exempting counties from liability are based,
is *Russell* v. *The Men of Devon*, 2 T. R., p. 667. The
action was upon the case, against the men dwelling in the
county of Devon, to recover satisfaction for an injury
done to the wagon of the plaintiffs in consequence of a
bridge being out of repair, which ought to have been
repaired by the county, to which two of the inhabitants,
for themselves and the residue of the men dwelling in

that county, appeared, and demurred generally, and there was judgment for the defendants.

Some, at least, of the reasons given for the judgment, have no force here. Lord KENYON, C. J., seemed to doubt whether the defendant was a corporation at all, against which a judgment could be rendered. He said, among other things: "But the question here is, whether this body of men, who are sued in the present action, are a corporation, or *qua* a corporation against whom such an action can be maintained. If it be reasonable that they should be by law liable to such an action, recourse must be had to the Legislature for that purpose. * * * I do not say that the inhabitants of a county or hundred may not be incorporated to some purposes; as if the King were to grant lands to them, rendering rent, like the grant to the good men of the town of Islington. But where an action is brought against a corporation for damages, those damages are not to be recovered against the corporators in their individual capacity, but out of their corporate estate: but if the county is to be considered as a corporation, there is no corporation fund out of which satisfaction is to be made "

Here, as we have already seen, ample provision is made for the satisfaction of judgments rendered against county commissioners in their corporate capacity.

ASHHURST, J., said, in the case above mentioned, among other things: "But there is another general principle of law which is more applicable to this case, that it is better that an individual should sustain an injury than that the public should suffer an inconvenience. Now if this action could be sustained, the public would suffer a great inconvenience; for if damages are recoverable against the county, at all events they must be levied on one or two individuals, who have no means whatever of reimbursing themselves; for if they were to bring separate actions against each individual of the county for his pro-

portion, it is better that the plaintiff should be without remedy."

. The inconvenience thus spoken of, which the public would suffer, has been entirely obviated by our statutes providing for the collection of judgments against counties. It is said in the case of *Dean* v. *New Milford Township, supra*, in speaking of *Russell* v. *The Men of Devon*, and the reasons therein given, above noticed, that " The inference is by no means unreasonable, that had not these reasons existed, the judgment would have been different."

It is not our purpose in this opinion to bring together the various cases bearing upon the question, or to attempt in any manner to reconcile them.

We have cited some that well support the view which we take of the question, and it would subserve no good purpose to cite or review those which hold a contrary doctrine.    The case of *Haag* v. *The Board of Commissioners of Vanderburgh County, ante*, p. 511, may also be mentioned as remotely analogous to the case here.    We may, however, before closing this opinion, notice the case of *Commissioners of Hamilton County* v. *Mighels*, 7 Ohio State, 109, which discriminates between a county and a municipal corporation, as a city, holding that the former would not be liable, while the latter might, under like circumstances.    It is said, in the opinion of the court in the cause, "it is freely admitted that if counties are in all material respects like municipal corporations proper, and may be fairly classed with them, then this action ought to be maintained.    But how is the fact?    This question is vital, and on its solution the case must depend.

"As before remarked, municipal corporations proper are called into existence, either at the direct solicitation or by the free consent of the people who compose them.

" Counties are local subdivisions of a State, created by the sovereign power of the State, of its own sovereign will, without the particular solicitation, consent, or concurrent

action of the people who inhabit them. The former organization is asked for, or at least assented to by the people it embraces; the latter is superimposed by a sovereign and paramount authority.

"A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are, in fact, but a branch of the general administration of that policy."

The above extract contains a graphic delineation of the differences between the method of the creation of a municipal corporation and that of the creation of a county, and between the objects, purposes and ends to be attained by the creation of each of those corporations. But does it state any satisfactory reason why the one should be liable to an action, and the other not, under like circumstances?

The ground of the action is the failure on the part of the corporation to perform a duty imposed upon it by law, whereby the party suing is injured.

It seems to us, that the method of the creation of the corporation can not be decisive of the question of liability, one way or the other. A county is created by the sovereign power of the State. A city can not be created otherwise than by the sovereign power of the State. This sovereign power may be exercised, to be sure, in the passage of general laws under which cities may be voluntarily organized. But the liability of the corporation, for the failure to perform a duty imposed by law, can not

be made to depend upon the question whether it was organized by the act and consent of the people inhabiting the territory, in pursuance of law, or was superimposed by law, without such consent. The people in each class of corporations elect their officers, for whose neglect of duty they may be liable, through the medium of the corporate organization. Then, as to the objects and purposes of these organizations, it may be observed, that the matter of keeping the streets of a city in repair is a matter of general state interest and policy, not affecting the people of the locality alone. No substantial difference is perceived between the duty of a county to keep the bridges therein in repair, and the duty of a city to keep its streets in repair, so far as the general public is concerned. They are both matters of public interest, and controlled by the general policy of the State. Or, to state the proposition conversely, the matter of keeping the bridges of a county in repair is as local in its character as the matter of keeping the streets of a city in repair.

The court, in the case in Ohio which we have been noticing, found it necessary to overrule the case of *Commissioners of Brown County* v. *Butt*, 2 Ohio, 348. That case was as as follows: Butt was the sheriff of the county, and had a prisoner in his custody on a *capias*. The commissioners of the county had failed to provide a jail, which it was their duty to provide, whereby the prisoner escaped. The creditor sued the sheriff for the escape, and recovered. Butt, the sheriff, then sued the commissioners, for failing to provide a jail, and recovered. The judgment was affirmed.

We are of opinion, that the court below erred in arresting the judgment.

The order below, arresting the judgment, is reversed, with costs, and the cause remanded, with instructions to the court below to render judgment for the plaintiff on the verdict.