## RANKIN *v.* BUCKMAN, ET AL.

### MUNICIPAL CORPORATIONS.

Where the charter of a municipal corporation provided that " the board of trustees has power and authority," within the limits of the corporation, " to construct, repair and clear streets," and to " levy and collect taxes," etc., the duty imposed by the charter upon these officers to keep the streets in repair and safe for the passage of persons and property, is imperative, and not discretionary. " The words power and authority in such case may be construed, duty and obligation."

### OFFICERS—DUTIES OF.

What officers are employed to do for others, and which is beneficial to them to have done, the law holds they ought to do, especially if the law supplies them with the means of executing the power.

### TRUSTEES—DUTIES AND LIABILITIES.

Where the charter of a municipal corporation provided that " the city is not liable to any one, for any loss or injury to person or property, growing out of any casualty or accident happening to such person or property, on account of the condition of any street or public ground therein, but that this section does not exonerate any officer of the city, or any other person, from such liability, when such casualty or accident is caused by the wilful neglect of a duty enjoined upon any such officer ": *Held,* That the repair of the streets, and the maintaining them in a safe condition for travel, was a duty enjoined upon the defendants, and if this plain duty is wilfully neglected, and any one is injured, they are liable for the damages sustained.

### PLEADING AND PRACTICE.

It is not necessary that the complaint should contain a distinct averment of the possession of the requisite funds to make repairs; *prima facie* such means exist, and the absence of them must be shown by way of defense.

APPEAL from Multnomah.    The facts are stated in the opinion.

*H. T. Bingham and Durham & Thompson,* for appellant.

Submit that when the statute refers to the duties of public officers exercising statutory authority delegated to them, concerning the public interests and the rights of third persons, the execution of the power may be insisted on as a duty, even though the phraseology of the statute be permissive only. And if the duty is not performed, an action will lie. (Sedg-

wick on Statutes and Const. Law, 386, 387; *Mayor of New York* v. *Furz*, 3 Hill, 612; Thompson on Negligence, vol. 2, 627.)

The repair of streets is a duty which devolved upon the defendants by necessary implication, from the acceptance of the privileges and immunities granted the city and its inhabitants by the charter. Want of funds, and the legal means of procuring them, must be shown by way of defense. (*Hoover* v. *Backhoof*, 44 N. Y., 113; *Shartell* v. *Minneapolis*, 17 Minn., 308.)

The respondents wilfully neglected a duty enjoined by law, and are liable for special injury sustained. (*Robinson* v. *Chamberlain*, 34 N. Y., 389; *Detroit* v. *Cory*, 9 Mich., 165; *Bryan* v. *Landon*, 3 Hun., 500; Cooley on Torts, 625, and cases cited.)

*J. H. Woodward, City Attorney, and E. D. Shattuck*, for respondents.

The complaint is fatally defective, because it does not allege any fact showing that the defendants, as a board or otherwise, had funds, or the power to raise funds, to repair the bridge in question. They are not liable for omitting or refusing to perform an act that is discretionary—*quasi judicial*. (Dillon on Municipal Corporations, sec. 764.)

In any event, there can be no duty to repair, unless there are funds, or the coercive power to raise funds sufficient for the purpose, which must be alleged and shown. (*Garling-house* v. *Jacobs*, 29 N. Y., 303, 312; *Commissioners* v. *Duckett*, 20 Md., 439.)

It is too well settled law to require citation of authorities that where public corporations maintain streets, bridges, wharves, docks, canals, or other like works for the benefit of the members of the public distributively, and for the profit of the corporation, by taking toll or other means of compensation—the corporation—and if the trustees are provided with corporate funds for the purpose, out of which they may

respond, they—the trustees—may be held liable to an individual for injury on account of failure to repair. But not so where the service is voluntary and maintained for the public collectively and the trustees are provided with no public funds out of which they may respond.

By the Court, LORD, C. J.:

This is an action to recover damages for an injury, resulting in the death of the daughter of the plaintiff, for negligence in not repairing a bridge.

The complaint alleges substantially, that the defendants were officers of the municipal corporation of the city of East Portland, duly elected and qualified as such, and constituting what is called the Board of Trustees of said city, and that each of them had accepted the said office and had entered upon the duties thereof; that by the charter of said city, it was the duty of said defendants, as such officers, to keep the streets of said city in good order and repair, and safe for travel; that among other streets is Fourth street, which extends over a deep ravine, and is projected over the same by means of a bridge and trestles; that the same was much traveled over and used by the citizens, etc., so much so that the duty of the defendants in the premises was a matter of public and general concern. That on a certain day the said bridge became and was insecure and unsafe for the passage and travel of passengers over and upon it, etc. That the said defendants, at and long prior to the accident hereinafter mentioned, were notified and were aware of the unsafe and insecure condition of said bridge, but the said defendants, wilfully disregarding the duties of their said office of Board of Trustees, wilfully, negligently and carelessly suffered and permitted the said bridge to remain unsafe and insecure, and without proper protection, or notice to citizens or travelers against accident.

That on the 4th day of August, 1880, the daughter of the plaintiff was lawfully passing along said bridge and over the same, and wholly unaware of danger, was accidently, and

without fault or negligence upon her part, precipitated through the planking or roadway of said bridge, down among the trestles thereof, and into the water at the bottom of said ravine, whereby the said Eva Rose Rankin received great bodily injury and was killed. Then follow other allegations immaterial to the controversy.

The complaint was demurred to and the demurrer was sustained, on the ground that it did not state facts sufficient to constitute a cause of action.

Two objections are urged to the sufficiency of the complaint. First, that the power and authority to repair, imposed upon the Board of Trustees by the charter, is not absolute and imperative, but discretionary; and, second, that it ought to be alleged affirmatively in the complaint that the defendants had funds sufficient, or the coercive power to raise funds sufficient, to make the necessary repairs.

At the common law, political divisions of the state, which have duties imposed upon them by the general law, without their consent, are not liable to respond to individuals in damages for their neglect, unless expressly made so by statute. Accordingly, such organizations as counties, towns, road districts, etc., the courts have held quite uniformly not to be liable in a civil action for damages for neglect of duty, unless such liability be expressly made so by statute.

Although such corporations may have the duty imposed upon them by general law to make and repair roads, streets and bridges, and also the power conferred to levy taxes therefor, the reasoning of the courts has been that this is a public duty, and not a corporate duty; and in this respect such corporations are to be regarded as public or state agencies, and not liable to be sued civilly, unless, as before stated, the action be expressly given by statute. (Dillon on Municipal Corporations, secs. 762, 785, and notes.)

The authorities, however, make a distinction between such organizations and a municipal corporation which exists under a special charter conferring peculiar powers and privileges,

and imposing special duties different from those which prevail in the case of the former.

But as was said in *Hill* v. *Boston*, 122 Mass., 344, where counties and towns are held liable to such actions, there is, of course, no reason why municipal corporations should be exempt from liability, unless directly made so by statute. But under the provisions of our statute all such corporations, whether incorporated towns, school districts or counties, are liable to respond in damages for an injury arising from some act or omission of such corporation.

Section 347 of the code provides that " an action may be maintained against a county, incorporated town, etc., for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation." This section of the code was adopted in 1862, and is still the law of this state. Subsequently, by an act of the legislature, the city of East Portland was incorporated, and the charter granted to the inhabitants thereof, which expressly exempts the city from any liability growing out of any casualty or accident, occasioned by the defective condition of any streets or public grounds within the territorial limits of the city, and transfers or attaches this liability to any officer or person out of whose wilful neglect of a duty imposed by the charter, or gross negligence, such casualty or accident is caused. This section is as follows:

" Sec. 33. The city of East Portland is not liable to any one for any loss or injury to person or property growing out of any casualty or accident to such person or property, on account of the condition of any street or public ground therein, but this section does not exonerate any officer of the city of East Portland, or any other person, from such liability, when such casualty or accident is caused by the wilful neglect of a duty enjoined upon such officer or person by the law, or by the gross negligence or wilful conduct of such officer or person in any other respect."

It will be observed that the first clause of this section ex-

pressly exempts the city from any liability to persons for injuries received on account of the streets being defective or out of repair. In *O'Hara* v. *City of Portland*, 3 Or., 526, a provision similar to this clause was held to be constitutional, and the city not liable for injuries sustained by reason of a defective sidewalk. (Abb. Pr. R. [U. S.] Vol. 10, 186; Sherman & R. on Negligence, section 124.)

But the latter clause of the section (33) imposes the liability from which the city is exempted in such case, upon any officer of the city, or any other person, when such accident is caused by the wilful neglect of a duty enjoined upon any such officer. The liability which the statute above referred to imposes upon the corporation for any act or omission resulting in an injury, is shifted, by this section of the charter, from the corporation to the officer or person out of whose negligence a duty enjoined, but unperformed, has resulted in an injury.

The "act or omission" mentioned in the statute, and by reason of which an injury has been sustained, must have grown out of some duty or obligation imposed by the charter or the law upon the corporation, before the liability to a civil action in damages could have been sustained. But in respect to municipal corporations this is nothing more than the courts have held, as before stated, in the absence of an express statute, that municipal corporations are liable to an action for damages for injuries resulting from their negligence by reason of the peculiar power and privileges conferred, and the special duties imposed upon them by their charter.

As the result of an examination of numerous judicial decisions, Judge Dillon, in his excellent work on Municipal Corporations, section 789, says: "It may be fairly deduced from the many cases on this subject, referred to in the notes, that in the absence of an express statute, imposing the duty, and declaring the liability, municipal corporations proper, having the powers ordinarily conferred upon them, respecting bridges, streets and sidewalks, within their limits, owe to the

public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in civil actions for special injuries resulting from neglect to perform this duty. Such a duty and liability are considered to exist, without a positive statute, when the following conditions concur: 1. The place in question, whether bridge, sidewalk or street, must be one which it is the duty of the corporation to repair or keep in a safe condition, and this duty (to keep in repair) if not specifically enjoined, must arise upon a just construction of the charter, or statutes applicable to the corporation. 2. This duty or burden must appear upon a fair view of the charter, or statutes, to be imposed, or rest upon the municipal corporation as such, and not upon it as an agency of the state, or upon its officers as independent public officers. (This, however, in general, appears sufficiently where the municipality sought to be made liable exists under a special charter, or general act, which confers upon it peculiar powers and privileges as respects streets, their control and improvement, not possessed throughout the state at large under its general enactments concerning ways.) 3. The power to perform the duty of maintaining the streets in a safe condition, by authority to levy taxes, or to impose local assessments for the purpose, must be (as it almost always is) conferred upon the corporation."

Bearing in mind that the city is exempted by section 33 of the charter, from liability for an injury to any person, growing out of any accident on account of the condition of any street, but that this section does not exonerate any officer of the city from such liability when the accident is caused by the wilful neglect of a duty enjoined upon such officer, we come now to inquire whether the duty and responsibility of keeping the streets in repair is not devolved upon the defendants, by any such certain and precise provisions of the charter, as to make them responsible to individuals for injuries resulting from the bad state or condition of the streets; or, in other words, to ascertain whether the duty imposed

upon the defendants by the charter, in respect to the matter in hand, is imperative, or discretionary. The question is one of legislative intention.

It will be admitted, of course, that a municipal corporation, or its officers to whom is confided legislative functions, is not liable to an individual damnified by the exercise, or failure to exercise, a legislative authority. But it may be affirmed with confidence that the general tenor of judicial authority sustains the doctrine that where the power conferred upon the officers is to be exercised for the benefit of others, and also includes the means of executing the power, the intent of the legislature is to impose a positive and absolute duty.

It is provided, among other things in the charter, that "the Board of Trustees has power and authority, within the limits of the corporation, to remove all obstructions from the public highways, streets, side and cross walks, gutters and sewers, and to provide for the construction, repair and cleaning of the same. To assess, levy and collect taxes, etc., and the board is authorized and empowered to enforce the collection of any general or special tax, levied in pursuance of this act, and may authorize the issue of warrants, and levy on the real and personal property, and cause the same to be sold," etc. Here, then, is the power and authority of the defendants to repair the streets and keep them in a safe condition, and to enable them to perform this duty, the power and authority to levy and collect taxes to pay for it. Besides, the duty in respect to highways and streets, imposed upon these officers, is not as independent public officers, acting in behalf of the state, for the territorial limits of the corporation is excepted out of the jurisdiction of the county court, and the jurisdiction of the supervisory officers of the county for road purposes. Manifestly the power and authority conferred upon the defendants is to be exercised for the benefit of others, the public good, and the means of executing the power, or to perform the duty of maintaining the streets in a safe condition, is supplied by

the most efficient instrumentalities of the law. This of itself is sufficient to indicate, by the special powers and privileges conferred, and the special duties imposed by the charter upon the defendants, that the legislative intent was not to impose discretionary but positive and absolute duties in respect to maintaining the streets in a safe condition for the passage of persons and property.

"But, where the duty to repair," says Judge Dillon, "is not specifically enjoined, and an action for damages caused by defective streets is not expressly given, still both the duty and the liability, if there be nothing in the charter, or legislation of the state, to negative the inference, has often and, in our judgment properly, been deduced from special powers conferred upon the corporation to open, grade, improve and exclusively control public streets within their limits, and the means from which, by taxation and local assessments, or both, the law places at its disposal to enable it to discharge the duty."

The various sections under articles four and six of the charter, confer all the power upon the defendants enumerated in the above quotation. They can improve, widen, alter the grade of any street, etc., or repair any street or part thereof, when deemed expedient, and provide for the payment by local assessments, or cause the same to be paid out of the general fund. Whether the cost of the improvement or repair of the street, under section 28, shall be assessed upon the adjacent property, or be paid out of the general fund, is a matter, of course, resting in their discretion. This they are required to do by ordinance, and it in no wise conflicts with the "power and authority" conferred under article IV., to "construct, repair and clean the streets."

In *Springfield Milling Co.* v. *Lane County,* 5 Or., 271, Mr. Justice Shattuck said: "When a public officer or body has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty, and though the phraseology of the statute may be per-

missive, it is nevertheless to be held peremptory." (Smith's Com., 727, 729; Sedgwick Stat. and Const. Law, 438.)

But the "power and authority" conferred upon the defendants to "construct or repair streets," is not permissive in its phraseology. These words, "power and authority" to "repair streets," etc., and "to levy taxes," etc., have received a judicial construction upon a subject almost identical in character with that under consideration. "It is a well settled principle that when a statute confers a power upon a corporation, to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority' in such case may be construed 'duty and obligation.'" (Dwarris on Statutes, 712; *Mayor and Common Council of Baltimore* v. ———, 9 Md. R., 174; *Com'rs Public Schools* v. *County Com'rs of Alleghany County*, 20 Md., 458; *County Com'rs* v. *Duckett*, 20 Md., 477.)

In Thompson on Negligence, vol. 2, page 753, it is said that, "it is now settled in most of the states, independent of statutes expressly so providing, that cities and towns which voluntarily accept charters from the state, clothing them with special privileges to be exercised for the benefit of their citizens, and committing to them exclusive control over streets, alleys and highways, within their limits, are liable in an action for damages to any person specially injured by their failure to keep such streets, alleys and other highways in suitable repair. And this is so, although the statute committing to such corporation the care of the streets and highways within its limits is only permissive in its language. The case becomes clearer, when the duty of keeping the streets in repair is clearly implied by the charter, and adequate means provided for its performance. The exercise of such power is not merely a duty, but imperative, and the words 'power and authority' in such a charter mean 'duty and obligation.'"

From this review, it must be manifest that the "power and authority" conferred upon the defendants by the charter, is

not merely a duty to be exercised at their pleasure, but an obligation they owe the public to keep the streets in repair and in a safe condition for travel. The charter expressly provides that any officer by whose wilful neglect of a duty enjoined any accident has happened, shall not be exonerated from liability; or, in other words, shall be liable in an action for damages for the injury sustained.

Having, then, the exclusive care and control of the streets, and the means provided to repair them when defective, the duty which the law imposes upon the defendants is imperative to see that the streets are kept in a safe condition for the passage of persons and property, and if this plain duty is neglected and any one is injured, they are liable for the damages sustained.

The second objection is, that it ought to be alleged in the complaint that the defendants had the requisite funds, or the coercive power to raise funds, sufficient to make the repair. That the defendants are invested with ample and coercive power under the charter to raise funds, has been sufficiently shown already, and this part of the objection is dismissed.

The question then is, is the complaint fatally defective for want of an allegation of the possession of the requisite funds by the defendants to make the repair ? " Want of funds, and of the legal means of procuring them, will, of course, be an excuse; but *prima facie* such means exist, and the absence of them must, it seems, be shown by way of defense, and evidence of a want of means, is, therefore, generally irrelevant." (Thompson on Negligence, vol. 2, 758, and authorities cited in notes.)

In *Adsit* v. *Brady*, 4 Hill, 634, Mr. Justice Bronson said: " It has not yet been decided that an individual possessing a civil remedy, must make such an averment, and as an original question, I should think it enough to show that the law imposed the duty of repairing, and then leave it to the officer to excuse himself, if he can, by showing a want of funds."

But in *Smith* v. *Wright*, 27 Barb., 622, it was held that

an averment in the complaint of the possession of the requisite funds by the commissioners is necessary.

In a still later case, *Hyatt* v. *Trustees of Rondout*, 44 Barb., 385, it was said, as a question of pleading, the cases are not decisive whether an averment of the possession of funds should be made in the complaint, leaving the defendant to set up the want of them in the answer, or not, and referred to the cases of *Adsit* v. *Brady* and *Smith* v. *Wright*, supra; but the court say: " Whatever may be the case in regard to commissioners of highways and towns, a different and more stringent rule appears to have been applied to corporations and the trustees of a village." The reason of this difference has already been sufficiently discussed not to require further notice. It is sufficient to say that *Hyatt* v. *Trustees of Rondout* was affirmed in ———— v. ————, 41 N. Y., 619. But in *Hover* v. *Barkhoof*, 44 N. Y., 118, the principle as decided in *Adsit* v. *Brady*, supra, was approved. Mr. Justice Earl says: " If the defendants had shown that they did not have the funds to repair the bridge, and that they could not have caused it to be repaired upon credit, under the statute, then they would have had a clear ground of defense. But in the absence of proof to that effect, they can not avail themselves of that ground of defense. Under the facts of this case, and the principle decided in *Adsit* v. *Brady*, 4 Hill, 630, they must be treated as if they had the requisite funds in hand, or under their control."

In *Shartle* v. *City of Minneapolis*, 17 Minn., 314, it was held that in an action against a municipal corporation for damages for an injury caused by a defective bridge, it is not necessary for the plaintiff to plead, in the first instance, that the means for repairing the bridge were provided for, or placed at the disposal of the defendant, unless, by the terms of the act of incorporation, the possession of the means is made a condition precedent of the defendants' liability.

From this review it is our opinion that it is not necessary to allege in the complaint the possession of the requisite funds

by the defendants to make the repair, but that *prima facie* such means exist, and the absence of them must be shown by way of defense.

In respect to *Garlinghouse* v. *Jacobs*, 29 N. Y., 297, relied upon by the defendants, it is sufficient to say that in that case the defendants had no funds, and no authority to obtain them, for the purpose of repairing bridges. In *Hoover* v. *Barkhoof*, supra, Mr. Justice Leonard said: "The court of appeals reversed that case (*Garlinghouse* v. *Jacobs*) in *Robinson* v. *Chamberlain*, 34 N. Y., 389, and placed the prior decision on the true ground, that the defendants were without funds, or the power to obtain them, and denied the doctrine there attempted to be established, that commissioners of highways were not liable to a private action for injuries caused by their neglect or omission to keep the bridges of their town in repair. The leading cases of this state and of England are all reviewed, and it was held, on careful consideration, that one who assumes the duties and is invested with the powers of a public officer, is liable to an individual who sustains a special damage by a neglect properly to perform such duties."

The case of *Bartlett* v. *Crozier*, 17 John., 440, also relied upon by the defendants, is not in point. The defendant was an overseer of highways, and had no authority to repair bridges, or any funds, or the power to raise funds; he was the mere subordinate agent of the commissioners, and the court held that the latter were responsible to the public for the repair of bridges, and thus reached a conclusion necessarily fatal to the plaintiff's right of recovery. It follows that the judgment of the court below must be reversed.

Judgment reversed.