[Filed April 30, 1892.]

## IVA TEMPLETON *v.* LINN COUNTY.

Per STRAHAN, C. J.; BEAN, J., concurring:

COMMON LAW—COUNTIES—DEFECTS IN HIGHWAY.—At common law, a county was not liable for an injury resulting from a defect in one of its highways, or roads.

CONSTITUTIONAL LAW—TERRITORIAL STATUTE—REMEDY AGAINST COUNTIES.— The repeal of the territorial statute making counties liable in actions at law for injuries to the rights of persons arising from acts or omissions of such counties, is not in conflict with section 10 of article 1 of the state constitution, which provides that every man shall have a remedy by due course of law for injury done him in person, property, or reputation.

Per LORD, J., dissenting:

COUNTIES—IMPLIED LIABILITY—COMMON LAW REMEDY.—When the legislature by statutory provision organizes a county into a body politic and

314  TEMPLETON *v.* LINN COUNTY. [Sup. Ct.

corporate, with power to contract and be contracted with, to sue and be sued, and devolves on it the duty to keep in repair the highways within its jurisdiction, and provides it with the means of enforcing the performance of this duty, there necessarily results, for the breach or non-performance of this duty, a liability against the county, for which the common law will furnish a remedy whether one is expressly provided by statute or not.

CONSTITUTIONAL LAW—FORMER REMEDIES—LEGISLATIVE POWER.—The provision of the state constitution, to the effect that every man shall have a remedy by due course of law for injury done him in person, property, or reputation, places it beyond the power of the legislature to take away remedies as they existed when the constitution was adopted.

Linn county: R. P. BOISE, Judge.

Plaintiff appeals. Affirmed.

STRAHAN, C. J.—The proposition, that at common law a county was not liable for an injury resulting from a defect in one of its highways or roads, is established by an array of authorities which cannot be questioned. (*White* v. *Comrs.* 90 N. C. 437; 47 Am. Rep. 534; *Dosdall* v. *Olmstead Co.* 30 Minn. 96; 44 Am. Rep. 185; *Wood* v. *Tipton Co.* 7 Bax. 112; 32 Am. Rep. 561; *Brabham* v. *Supervisors,* 54 Miss. 363; 28 Am. Rep. 352; *White* v. *Bond Co.* 58 Ill. 297; 11 Am. Rep. 65; *Downing* v. *Mason Co.* 87 Ky. 208; 12 Am. St. Rep. 473; *Reardon* v. *St. Louis Co.* 36 Mo. 555; *Swineford* v. *Franklin Co.* 73 Mo. 279; *Clark* v. *Adair Co.* 79 Mo. 536; *Granger* v. *Pulaski Co.* 26 Ark. 37; *Barnett* v. *Contra Costa Co.* 67 Cal. 77; *Scales* v. *Ordmary,* 41 Ga. 225; *Hedges* v. *Madison Co.* 6 Ill. 567; *Marion County* v. *Riggs,* 24 Kan. 255; *Watkins* v. *County Ct.* 30 W. Va. 657; *Manuel* v. *Board of Comrs.* 98 N. C. 9; *Fry* v. *Albemarle Co.* 86 Va. 195; 19 Am. St. Rep. 879; *Gilman* v. *County,* 8 Cal. 52; 68 Am. Dec. 290; *Woods* v. *Colfax Co.* 10 Neb. 552; *Monroe Co.* v. *Flynt,* 80 Ga. 489; *Board of Comrs.* v. *Mighels,* 7 Ohio St. 109; *Freeholder* v. *Strader,* 18 N. J. L. 108; 35 Am. Dec. 530; *Cooley* v. *Freeholders,* 27 N. J. L. 415; *Pray* v. *Jersey City,* 32 N. J. L. 394; *Young* v. *Comrs.* 2 Nott & McC. 537; *Ensign* v. *Supervisors,* 25 Hun, 20; *Bartlett* v. *Crozier,* 17 Johns. 449; 8 Am. Dec. 428; Cooley's Const. Lim. 3 ed. 247, 6 ed. 301; Dill. Mun. Corp.

§§ 996, 997, 999; *Barbour Co.* v. *Horn,* 48 Ala. 566 ; *Covington Co.* v. *Kinney,* 45 Ala. 176; *Rankin* v. *Buckman,* 9 Or. 253 ; *Sheridan* v. *Salem,* 14 Or. 328 ; *Ford* v. *Umatilla Co.* 15 Or. 313; *Grant Co.* v. *Lake Co.* 17 Or. 453; *State ex. rel.* v. *Comrs.* 11 Ohio St. 183; *Morey* v. *Newfane,* 8 Barb. 645; *Lorillard* v. *Monroe,* 11 N. Y. 392; 62 Am. Dec. 120 ; *Smith* v. *Board,* 46 Fed. Rep. 340; *Barnes* v. *Columbia,* 91 U. S. 540; *Conrad* v. *Ithaca,* 16 N. Y. 158.) The appellant did not seek to controvert this proposition upon the trial in this court. Her only contention is, that at and before the adoption of the constitution of this state, there was a statute in force in the then territory, enacted by its legislature, creating a liability against any county where any injury might happen to any person through a defective road or bridge, where such road or bridge was under the control of the county court or board of county commissioners of such county, and that by section 10, article 1, of the constitution, the legislature of the state was disabled from repealing said territorial statute, without enacting another which would be a substantial equivalent for the law as it then stood upon that subject. The provision of the constitution relied upon is as follows: "No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay; and every man shall have remedy by due course of law for injury done him in person, property, or reputation."

Section 347 of the code, as originally enacted, is not materially variant from the law as it stood prior to the adoption of the constitution, and is as follows: "An action may be maintained against a county or other of the public corporations mentioned or described in section 346, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff, arising from some act or omission of such county or other public corporation." In 1887 this section was amended by omitting the words, "or for an injury to the rights of the plaintiff, arising from some act or omission of such county or other public corporation," and by the addition

of the words, "and not otherwise," after the word "authority," in said section. The liability created against a county by this statute, as it existed prior to the amendment in 1887, was recognized and enforced in *McCalla* v. *Multnomah County*, 3 Or. 424, and the rule there stated continued to be recognized until the amendment. This is the first case arising under the statute as amended that has reached this court. There being no common law liability, unless the statute has created a liability, there is none; and the statute having been repealed, there is none under the statute, if it were competent for the legislature to repeal it. It must be conceded that the right to repeal existed unless the legislature was prohibited or restrained from repealing it by article 1, section 10, of the constitution. The words, "and every man shall have remedy by due course of law for injury done him in person, property, or reputation," are claimed to operate as a guaranty in favor of all persons who might be injured by a county's neglect, that the legislature should never so change the statute as to destroy the liability of such county. In other words the constitution found a certain liability created by statute resting upon the several counties, and tied the hands of the legislature so that such liability should endure as long as the constitution shall remain in force. As a proposition of constitutional law, this contention seems startling · and although the constitutions of many of the states of this union contain substantially the same provision as section 10, *supra*, no judicial authority was cited upon the argument in support of it, and I think it may be safely assumed that none exists.

The repeal of the statute creating the liability of a county for negligence, is not the only way that liability might be destroyed. It is within the power of the legislature to repeal the act creating a county, and with such repeal a liability would be as effectually cancelled and destroyed as if the county had never existed. Says the supreme court of the United States, in *Laramie County* v. *Albany County*, 92 U.S. 307: "Corporations of this kind are properly denomi-

nated public corporations, for the reason they are parts of the machinery employed in carrying on the affairs of the state; and it is well settled law that the charters under which corporations are created, may be changed, modified, or repealed, as the exigencies of the public welfare may demand." And the plenary power of the legislature over such corporations was fully recognized by this court in *Morrow Co.* v. *Hendryx,* 14 Or. 397. It was argued upon the trial that the act making counties liable for the neglect of those who may be entrusted with the administration of their affairs for the time being, was in the nature of a remedy, and for that reason it was placed beyond the power of the legislature to repeal it. A remedy for what? If this statute creates a remedy, where is the law that creates the liability? We have seen that it is not the common law, and there was no other statute on the subject. So that to maintain the doctrine claimed by the appellant, it would have to be held that this statute performed the double office of creating the liability against the county, and also of furnishing a remedy whereby the liability may be enforced, and these by the same words of the act. A process of reasoning which leads to such consequences must be fallacious.

In this case the statute making the county liable was repealed before the alleged injury. At the time of the repeal the plaintiff had no cause of action against Linn county, and her sole cause of complaint is that the repeal of the statute, before the injury, cut off a cause of action which she otherwise would have had against the county. If the plaintiff's rights had accrued before the repeal of the statute, there would have been more reason for her contention, but it would not have been well founded in that case; but when the repeal of the statute did not in any manner affect her at the time, it is difficult to see how her misfortunes, happening after its repeal, can furnish her any grounds of complaint. In a legal sense there can be no liability for negligence where the defendant owed the

plaintiff no duty; and inasmuch as the duty which a county owed was created by statute only, its repeal destroyed the only foundation upon which an action for negligence could rest.

It was insisted upon the argument that section 10, *supra,* was in the nature of a guaranty to the citizens of the state that some rights were secured to them which are placed beyond the power of legislation, and that it was the duty of the court to define those rights. The time allowed for the consideration of this subject is too brief to allow an exhaustive examination of it; besides, it is never safe for a court to undertake to decide any more than the exact question before it. In addition to this, on the principle of inclusion and exclusion, the court will be better able to to determine the effect of this provision of the constitution in each particular case as it shall arise. I think it may be safely said, that without the existence of a right, a party is entitled to no remedy, and the constitution does not purport to guarantee any. The rights of a party may be violated, and for such violation such party must have a remedy. What are these rights? Vested rights undoubtedly. Said Judge COOLEY: " But a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. When it springs from contracts, or from the principles of the common law, it is not competent for the legislature to take it away; and every man is entitled to a certain remedy in the law for all wrongs against his person or his property, and cannot be compelled to buy justice, or to submit to conditions not imposed upon his fellows as a means of obtaining it." Vested rights are placed under constitutional protection, and cannot be destroyed by legislation. Not so with those expectancies and possibilities in which the party has no present interest. Take the statutes of descent, by way of illustration. A man's heirs have no vested interest in that statute, though, if left unre-

pealed until his death, they would inherit his property; but the legislature might interfere in the mean time and repeal the law altogether, or by a new act change the course of descent, and they could have no cause of complaint. Under a constitutional provision in all respects similar to our own, it was held that there is no vested right in the law generally, nor in legal remedies, and it is competent for the legislature to make changes in these so long as they do not affect the obligation of contracts. (*Edwards v. Johnson*, 105 Ind. 594; *Bryson v. McCreary*, 102 Ind. 1.)

In *Oriental Bank v. Freese*, 18 Me. 109; 26 Am. Dec. 701, it was held that the legislature has power to take away by statute what is given by statute except vested rights. So in *Fire Depart. v. Ogden*, 59 How. Pr. 21, it was held that where a penalty has been imposed by law, the legislature has power to repeal it entirely, or to limit the causes in which it is recoverable, even though an action has been brought for its recovery. And in *Welch v. Wadsworth*, 30 Conn. 149; 79 Am. Dec. 236, it was held that by the repeal of the penal statute, all penalties fall even if given to individuals and suit has been brought and is pending for them. So also in *Bank v. State*, 12 Ga. 475, it was held that an informer who commences a *qui tam* action under a penal statute, does not acquire thereby a vested right to the forfeiture; his claim to the penalty is inchoate and cannot be fixed except by judgment; and held further, that no judgment can be rendered on a repealed statute; the repeal prevents the imperfect right from being consummated, and it is competent for the legislature to pass such repealing statute at any time before final judgment; and it matters not whether the whole penalty, when recovered, is given to the public, or the prosecutor, or divided between them. The same doctrine is announced in *Parmelee v. Lawrence*, 44 Ill. 405; *Henschall v. Schmidtz*, 50 Mo. 454; *Chaffee v. Aaron*, 62 Miss. 29; *County of Menard v. Kincaid*, 71 Ill. 587; *Musgrove v. Vicksburg etc. R. R. Co.* 50 Miss. 677.

It must not be overlooked that courts never declare an act of the legislature unconstitutional unless the conflict is manifest and free from all reasonable doubt. This alone ought to be sufficient to save the act of 1887 from that fate.

I regret that a want of time prevents a fuller and more careful review of this most important and interesting subject; but enough has been said to indicate the main reasons on which this opinion is based. That is all that is possible at present.

I think the judgment appealed from should be affirmed.

BEAN, J., concurring.—By the decided weight of authority, a county is not liable for an injury received from a defective highway, unless by statute; while the courts seem equally agreed that such liability exists as against a municipal corporation. The statute of 1854, which gives a remedy against a county for such an injury, also provided that an action might be maintained against a municipal corporation for a similar injury. So that at the adoption of the constitution a person injured by reason of a defective highway had a right of action, both by the common law and by statute, against the municipal corporation having supervision and control thereof; and yet, in *O'Harra* v. *Portland,* 3 Or. 525, this court held that an act of the legislature exempting the city of Portland from liability for an injury to the person, growing out of the defective condition of any street or sidewalk, was constitutional. And the doctrine of this case was recognized in *Rankin* v. *Buckman,* 9 Or. 253. If the legislature can constitutionally take away both the common law and statutory right of action against a municipal corporation for an injury received from a defective highway, it certainly can withdraw the statutory remedy against a county. The provision of the constitution under consideration in this case does not seem to have been noticed or considered by the courts in *O'Harra* v. *Portland,* but the result of that decision

is fatal to plaintiff's contention here, and I am not prepared to say that such a conclusion, so far at least as the statutory right of action is concerned, is incorrect, and therefore concur in the result reached by the chief justice.

LORD, J., dissenting.—I am unable to concur in the reasoning or conclusion reached in this case. In this state, a county, through the agency of the county court, has entire charge and control of the highways and bridges within its limits, and has devolved upon it the duty to keep them in repair, and the power to raise money by taxation to enable it to perform that duty. In respect to bridges, the county court is directly authorized "to provide for the erection and repairing within the county of public bridges upon any road or highway established by public authority." (Hill's Code, § 870, sub. 4.) Such being the duty and power of the county to keep in repair its bridges, it ought, upon principle, to be held liable to any one for an injury sustained in consequence of its failure to keep a bridge upon the highway in repair. As WORDEN, J., said: "The obligation thus imposed upon the board to cause all bridges in the county to be kept in repair, with ample power to provide means to discharge the obligation, carries with it a corresponding right in every one having occasion, in the usual course of travel, to use the bridges, to have the obligation fulfilled, and the bridges kept in repair. And it seems to us to follow, that where the board negligently suffers such a bridge to be out of repair, whereby a person, in the ordinary use of it, is injured in person or property, without his own fault, he must have an action against the board for damages; otherwise, there will be a wrong without a remedy." (*House* v. *Commissioners,* 60 Ind. 583; 28 Am. Rep. 657.) While the courts held with a good deal of unaminity that a chartered corporation, with authority to keep in repair its streets and bridges within its limits, and power to raise money by taxation for that purpose, is liable.

XXII OR. — 21.

in damages for injuries sustained by any one in consequence of neglect to keep them in repair, unless otherwise provided by statute, they have, with almost equal unanimity, denied the application of the same principle of liability to counties for failing to keep in repair the highways and bridges within their limits, when clothed with a like authority over them, and power to provide means to enable them to do so. But the reason given for this distinction, namely, that a liability should attach to municipal corporations, and not to counties, because the former are supposed to accept their charters voluntarily, and the latter to have the duties and obligations imposed upon them involuntarily, has not been satisfactory, but has been the subject of much adverse criticism.

"There is no sound distinction," says Judge THOMPSON, "between the sanction of an obligation voluntarily assumed by a public body and that of an obligation which the legislature, in due exercise of its powers, has imposed upon it." (1 Thomp. Neg. 618.) "If it be granted," says Judge ELLIOTT, "that a public corporation, such as a city, is liable because it is charged with a public duty, and invested with the means to enable it to perform that duty, it is impossible, as it seems to us, for one who proceeds upon principle, to avoid the conclusion that a county charged with a specific duty and provided with the means of enforcing it, is not likewise liable." (Elliott, Rds. & Sts. 41; 2 Dill. Mun. Corp. § 998.)

The leading case, on which the cases exempting counties from liability in this country are based, is *Russell* v. *The Men of Devon*, 2 T. R. 667. The action was brought by an individual against the inhabitants of the county of Devon for an injury sustained in consequence of a county bridge being out of repair. Two of the inhabitants, for themselves and others of the county, appeared and demurred generally, and there was judgment for the defendants. As showing the reasons given for the judgment, Lord KENYON,

C. J., said: "But the question here is, whether this body
of men, who are sued in the present action, are a corpora-
tion or a *qua* corporation, against whom such an action can
be maintained. If it be reasonable that they should be
by law liable to such an action, recourse must be had to
the legislature for that purpose. * * * I do not say
that the inhabitants of a county or hundred may not be
incorporated to some purposes; as if the king were to grant
lands to them, rendering rent, like the grant to the good
men of the town of Islington. But where an action is
brought against a corporation for damages, those damages
are not to be recovered against the corporators in their
individual capacity, but out of their corporate estate; but
if the county is to be considered as a corporation, there is
no corporation fund out of which satisfaction is to be made."
ASHHURST, J., said: "But there is another general prin-
ciple of law which is more applicable to this case—that it
is better that an individual should sustain an injury than
that the public should suffer inconvenience. Now, if this
action could be sustained, the public would suffer a great
inconvenience; for if damages are recoverable against the
county, at all events they must be levied on one or two
individuals who have no means whatever of reïmbursing
themselves; for if they were to bring separate actions
against each individual of the county for his proportion,
it is better that the plaintiff should be without remedy."

The reasons given for this judgment have no force under
the law regulating our counties. The county is a body
politic and corporate, and as such may sue and be sued,
and ample provision is made for the satisfaction of judg-
ments rendered against the county. As the court said in
*Dean* v. *New Milford*, 5 W. & S. 547, in speaking of *Russell* v.
*The Men of Devon, supra,* "the cause was decided for reasons
which do not exist in this state. (1) That a county was
not a corporation, and (2) that there was no county fund
out of which satisfaction could be made. * * * The

inference is by no means unreasonable that, had not these reasons existed, the judgment would have been different." Judge THOMPSON says: "The ground on which Lord Kenyon placed his judgment in *Russell* v. *Men of Devon*, that counties have no corporate fund, and that judgments for damages against them would have to be levied off the property of any one or more of the individual inhabitants, is not sound when applied to counties in Missouri, Illinois, and other western states. The counties are political bodies, having a common administrative board, elected by the voters of the county, by which the business of the county is transacted. Through this board the county contracts, and is contracted with, sues and is sued. Many counties issue negotiable securities in large amounts. Their administrative boards possess a limited power of taxation for county purposes. In these respects no substantial difference is perceived to exist between them and chartered municipal corporations." (1 Thomp. Neg. 618.) It must be confessed, then, as Judge DILLON says, "it is not easy to find a legal basis for the distinction between cities and counties in respect to the duty to keep the streets and highways under their respective jurisdictions in repair, whereby the former are held to an implied civil liability for damages caused by the neglect of this duty, and the latter are held not to be thus liable." (2 Dill. Mun. Corp. 998.)

The truth is, there is no basis upon which to rest the distinction, for the reason that none exists. That eminent jurist, BLACK, C. J., says: "Every highway or thoroughfare which the public has the right to use, must be kept by somebody, in such order that it can be safely used; and if any serious injury happen to an individual in consesequence of its bad condition, those who are bound to repair must answer in damages." After citing several authorities, he proceeds: "I have cited these several cases to show that a party bound to repair, whether it be an individual, a private corporation, a township, a district, or city, must perform

the duty, or pay, in an action on the case, for all injuries to persons and property which may be caused by the omission." (*Erie City* v. *Schwingle*, 22 Pa. St. 384; 60 Am. Dec. 87.)

So that, in my view, it is immaterial whether a right of action is given by statute or not, when the legislature, by statutory provision, creates a county into a body politic and corporate, giving it the power to contract, and to be contracted with, to sue and to be sued, and devolves upon it the duty to keep in repair the highways and bridges within its jurisdiction, and provides it with the means of enforcing the performance of this duty, the effect of such legislation is to create a liability against the county for a breach or non-performance of such duty, for which the common law will furnish a remedy. In other words, out of the obligation imposed, by such statutory provisions, there arises against the county a liability for an injury when it fails to keep in repair its highways and bridges, to be enforced by action as in like cases. As touching this identical question, I agree with Mr. Justice DEADY, when he said: "Upon this state of the obligation and power of the county, it is liable, in my judgment, for an injury sustained by any one in consequence of its failure to keep a highway or bridge thereon in reasonable repair; and, on principle, the common law would furnish a remedy therefor as in the case of an incorporated town." (*Eastman* v. *Clackamas Co.* 32 Fed. Rep. 30.)

In addition to this, there are other considerations of a constitutional character that bear upon the right to maintain this action.

By section 4, Laws, 1854, 168, an action was authorized to be brought against any county in the then territory, either upon a contract, or "for an injury to the rights of the plaintiff, arising from some act or omission" of said county, which was continued in force after the adoption of the constitution by section 7, article 18, of the constitution, which provides "that all laws in force in the territory of Oregon when this constitution takes effect, and consistent

therewith, shall continue in force until altered or repealed."
And by section 347 of the code of civil procedure, which
took effect June 1, 1863, it was reënacted and continued
with some verbal alterations.   On February 21, 1887, sec-
tion 347, *supra*, was amended limiting the right to maintain
an action against a county to cases arising on contract, and
not otherwise.   (Hill's Code, § 350.)   It is provided by sec-
tion 10, article 1, of the constitution, as follows:  "No court
shall be secret, but justice shall be administered openly
and without delay; and every man shall have remedy by
due course of law for an injury done him in person, prop-
erty, or reputation."

In view of this state of the law, and this constitutional
provision, guaranteeing to every man a remedy by due
course of law for an injury done him in his person or
property, the right of the plaintiff to maintain this action,
or to have a remedy for the injury sustained by the negli-
gence of the defendant, is a vested right which the legislature
cannot take away; and, as a consequence, the amendment
to section 347, *supra*, denying such remedy, is null and void.
As it is not doubted but that this constitutional provision
preserved such remedies as the common law afforded, it is,
difficult to understand, in view of the remedy afforded by
the common law against incorporated towns or cities, why
it should not preserve a remedy against a county for an
injury arising from its neglect, when the statute of the ter-
ritory, for years before, and at the time of the adoption of
constitution, gave a right of action — a remedy — against a
county for an injury caused by its wrongful act or omission.

If we admit that the common law did not furnish any
remedy against a county, then this territorial statute was
enacted to afford a remedy for an injury for which it did
not provide, and thus obviate its defect and injustice.
Such, then, being the law at and before the formation
of the constitution, the provision that "every man shall
have remedy by due course of law for an injury done

him in person or property," would preserve to him a remedy or right to maintain an action against a county for an injury sustained by its negligence. As observed by Mr. Justice DEADY: "Whatever injury the law, as it then stood, took cognizance of and furnished a remedy for, every man shall continue to have a remedy for by due course of law. When this constitution was formed and adopted, it was and had been the law of the land from comparatively an early day, that a person should have an action for damages against a county for an injury caused by its act or omission. If this then known and accustomed remedy can be taken away in the face of this constitutional provision, what other may not? Can the legislature, in some spasm of novel opinion, take away every man's remedy for slander, assault and battery, or the recovery of a debt, and if it cannot do so in such cases, why can it in this?" (*Eastman* v. *Clackamas Co. supra.*) In construing a similar provision under the constitution of Missouri, it was held by the supreme court of that state, that the provision meant that a remedy should be afforded for such wrongs as are recognized by the law of the land. (*Landis* v. *Campbell*, 79 Mo. 433; 49 Am. Rep. 239.) By the law of the land, is meant the general public law of the state, binding alike upon all the members of the community. The law of the land, at and before the adoption of the constitution, provided a remedy against a county for an injury to any one arising from its wrongful act or omission; and for such injuries or wrongs, as the law of the land recognized and provided a remedy, when the constitution was formed and adopted, the courts must afford a remedy under the guarantee of this constitutional provision. In the interpretation of the provisions of a constitution, contemporaneous construction is always resorted to to throw light upon them and explain their purpose and meaning. What was the law and practice at the time,—what was the wrong the law was designed to remedy,—the framers of the constitution are supposed to have known when they formed it, and

the people when they ratified and adopted it. The case of
*Tribou* v. *Strowbridge*, 7 Or. 156, illustrates the application
of this principle of interpretation, and by analogy is deci-
sive of the contention here involved. In that case, the
validity of the statute authorizing the court in actions at
law to refer causes which involve the examination of long
accounts, whether the parties assent or not, was questioned
upon the ground that the statute violated section 17 of
article 1 of the constitution, which provides that "in all
civil cases the right of trial by jury shall remain invio-
late." "This language of the constitution," said BOISE, J.,
"indicates that the right of trial by jury shall continue to
all suitors in courts in all cases in which it was secured
to them by the laws and practice of the courts at the time
of the adoption of the constitution. So that, in order to
ascertain whether such right exists in this case, we must
look into the history of our laws and jurisprudence at and
before the adoption of the state constitution. The statute
in question was passed by the legislature of the late terri-
tory of Oregon in 1854, and has been copied into the pres-
ent code, so that this statute has been in force since that
time, and was the law of the territory at the time the con-
stitution was adopted, and therefore does not abridge the
right of trial by jury as it existed when we became a state.
Under this statute cases like this have been referred and
tried by a referee without question as to the authority of
the court to order the reference, for a quarter of a century;
and was there doubt as to the constitutionality of this
statute, it would, under the circumstances and the sanc-
tion of long usage, have to be solved in favor of the stat-
ute." Construed in the light of such legislative expositions,
we are able to discover and understand the meaning of the
provisions of the constitution, and the rights and remedies
such provisions were intended to secure and preserve against
legislative deprivations. As the territorial statute giving
to every man a remedy against the county for neglect to

keep in repair the highways and bridges within its limits was in force before and at the time of the adoption of the constitution, when the framers of the constitution inserted the provision securing to every man a remedy for an injury done him in person and property, the effect of that provision was to secure to every man, by due course of law, a remedy against a county for a breach of duty to keep in repair its bridges, which the legislature cannot take away. Nor is there anything in the case of *O'Harra* v. *Portland*, 3 Or. 525, in conflict with this result. There was no attempt by section 127 of the charter to deprive the person injured by a defect in a street, of a remedy. The liability was shifted from the city of Portland to the officer or officers upon whom the duty devolved and out of whose negligence the injury resulted. There was a remedy. Hence, as the case discloses, the point here was not involved, nor could it be raised.