Submitted on briefs February 5, affirmed March 4, 1924.

# JOHN A. GEARIN *v.* MARION COUNTY.

· (223 Pac. 929.)

**Counties—Duties of Counties Imposed by Law in Performance of Which They Act on Behalf of State.**

1. The duties of counties are imposed by law, and in the performance of them they act for and on behalf of the state, of which they are civil or political agencies, and though a county is a body corporate and politic, and has the power to sue and be sued (Section 3191, Or. L.), its rights are not determined by the law applicable to private corporations.

**Counties—County not Liable at Common Law for Wrongful Acts or Omissions of Its Officers.**

2. A county is not liable for the wrongful acts or omissions of its officers, agents, servants or employees unless made so by statute or some constitutional provision.

**Constitutional Law — Guaranty of Due Course of Law for Injury Held not Applicable to Action Against County Sounding in Tort.**

3. Though constitutional guaranty (Const., Art. I, § 10) as to due course of law for injury to a person, his property or reputation, is self-executing, it does not apply to an action sounding in tort when brought against the state or one of the counties thereof.

**Counties — Officer Acting in Excess of Authority is Personally Liable for Damages Arising from Injury.**

4. If an officer or agent of the state or county does an unauthorized act in a proper manner, neither the officer nor the state or county is liable for an injury resulting therefrom, but the officer is personally liable to the injured person for damages occasioned by his act done under an unconstitutional statute or in excess of his authority.

**Action—Distinction Between "Action in Contract" and "Action in Tort" Stated.**

5. An "action in contract" is for the breach of a duty arising out of a contract, either express or implied, while an "action for tort" is for a breach of duty imposed by law.

**Pleading — Whether Action in tort or in Contract Determined by Pleadings.**

6. Whether an action is in tort or in contract must be determined solely by the pleadings.

Eminent Domain—Matters Held not to Constitute Taking of Property for Public Use.

7. Destruction of a part of plaintiff's property through the washing away of his buildings by reason of a flow of logs, trees and stumps across his land, caused by their release by defendant county from piers to which they were swept by an unusual freshet, at a place where they could have been released to flow down the main channel of the river, instead of across plaintiff's land, *held* not a taking of plaintiff's property within Constitution, Article I, Section 18, prohibiting taking of private property for public use without compensation; "public use" implying a possession, occupation, and enjoyment of the land by the public at lárge, or by public agencies; and a promise on the part of the county to pay for the property could not be implied.

Counties—Complaint Against County Held One Sounding in Tort for which no Recovery Could be had in Absence of Statute Creating Liability for Acts of Officers.

8. A complaint against a county, the gist of which was that defendant in its removal of logs, trees, and stumps from piers of a bridge to which they were swept by an unusual freshet, wrongfully released them, in that, instead of releasing them at a place from which they could have been made to flow down the main channel of the river, defendants released them at a place where they would and did flow across plaintiff's land and came into contact with his buildings, resulting in their being washed away and destroyed, including the contents thereof, and in leaving a deposit on his land of logs, trees and stumps, *held* one sounding solely in tort for which no recovery could be had in the absence of a statute creating the obligation of the county to answer for the individual tort of its officers, in view of Section 358, Or. L., despite Section 3191; the acts complained of not being the subject of ratification or adoption by plaintiff permitting him to waive the wrong and sue upon them as an implied contract.

From Marion: PERCY R. KELLY, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief over the names of Messrs. *Smith & Shields* and *Mr. John M. Gearin.*

For respondent there was a brief over the name of *Mr. John H. Carson,* District Attorney.

7. Consequential damages to property from proper exercise of governmental powers as taking for public use, see notes in 16 **Am. St. Rep.** 610; 4 **Ann. Cas.** 1185.

See 1 C. J., pp. 1013, 1015; 12 C. J., pp. 733, 1288; 15 C. J., pp. 389, 391, 571; 20 C. J., pp. 668, 669; 29 Cyc. 1441.

RAND, J.—Plaintiff brought this action against
Marion County to recover damages alleged to have
been occasioned by the wrongful acts of the agents
and employees of the county.  The complaint alleges
that the plaintiff is the owner of a farm situate within
the county and on the bank of the Willamette River,
which river forms the boundary between Marion and
Yamhill Counties; that along the west boundary of
the farm is a county road leading to a bridge con-
structed by said counties across said river; that in
January, 1923, there was an unusual freshet which
caused the waters of the river to rise to an exces-
sively high stage and to overflow and flood a large
portion of plaintiff's land and to spread out over a
wide basin of farm lands to an average depth of ap-
proximately eight feet; that a large quantity of logs,
trees and stumps was gathered up and carried by the
waters of the river and lodged against the piers of
the bridge, resulting in danger of the bridge being
washed away; that in order to protect the bridge
against such danger the defendant county employed
men and furnished them with boats and equipment
to remove the logs, trees and stumps from the piers
of the bridge; that in removing the same, instead of
releasing them in the main channel of the river where
they would float down without harm to plaintiff's
property, said employees, under the directions of the
county, caused the same to be moved to and to be re-
leased at a place where they would float across plain-
tiff's land; that as so released and discharged some
of the logs, trees and stumps were carried by the
water and floated against the buildings on plaintiff's
farm, causing said buildings to be floated away and,
together with their contents, to be lost and destroyed,
while a part of said logs, trees and stumps were de-
posited on plaintiff's land, from whence they can be

removed only at great expense to plaintiff; that on account of said alleged wrongful acts, plaintiff sustained damage in the value of the buildings and their contents, and the cost of removing the logs, trees and stumps from his land, and prays judgment for the aggregate amount of damages alleged to have been thus sustained. The Circuit Court sustained a general demurrer to the complaint and dismissed the action.

Upon his appeal plaintiff contends that the demurrer should have been overruled because (1) under the allegations of the complaint the tort is waived and the action is in contract; (2) the obligation of the county to pay for the destruction and appropriation of the property is one created or implied by law, and therefore the case comes within the rule followed and applied in *Theiler* v. *Tillamook County,* 75 Or. 214 (146 Pac. 828); (3) the acts of the county amount to a taking of plaintiff's property for a public use within the meaning of Article I, Section 18, of the Constitution of Oregon; while the defendant contends (a) that the complaint alleges a tort for which an action against the county will not lie, and therefore the case comes within the rule followed in *Rapp* v. *Multnomah County,* 77 Or. 607 (152 Pac. 243), and *Clark* v. *Coos County,* 82 Or. 402 (161 Pac. 702), and (b) that the facts alleged in the complaint do not constitute a taking within the meaning of the constitutional guaranty that private property shall not be taken for a public use without just compensation.

At common law an action would not lie against a county. Counties were not corporations, and they had no corporate capacity, either to sue or be sued. They were created for legislative and judicial purposes. They had no governing board, no power to levy taxes and no corporate fund out of which a judg-

ment against them could be satisfied. Nor would an action lie against the inhabitants of a county unless some act of Parliament gave a right of action: *Russell* v. *Men of Devon*, 2 T. R. 667; 15 C. J., p. 663; *Eastman* v. *Clackamas County*, 32 Fed. 24.

1. By statute in this state a county is a body politic and corporate and has the power to sue and be sued: § 3191, Or. L. But its rights are not to be determined by the law applicable to private corporations: *Yamhill County* v. *Foster*, 53 Or. 124 (99 Pac. 286). Counties are created for governmental purposes. Their duties are imposed upon them by law, and in the performance of their duties they act for and on behalf of the state. They are therefore civil or political agencies or instrumentalities of state government. In the absence of some constitutional or statutory provision imposing liability, an action will not lie against a county in this state. Therefore they are not liable to respond in damages for a tort arising from the negligent act or omission of their officers, agents or employees, unless made so by statute or some constitutional provision.

2. That a county is not liable for the wrongful acts or omissions of its officers, agents, servants or employees, is now the settled law of this state: *Rapp* v. *Multnomah County, supra; Clark* v. *Coos County, supra.* In those cases the court construed Section 358, Or. L., which provides: ''An action may be maintained against any of the organized counties of this state upon a contract made by such county in its corporate character, and within the scope of its authority, and not otherwise; * * ,'' and held that no action can be maintained against a county for a tort. Plaintiff denies the applicability of these decisions to the facts alleged in the complaint and contends that in each of those cases the question was whether an

injured employee of the county could recover from
a county under the Employers' Liability Act, because
of injuries sustained while in its employ.   Both of
these actions were *ex delicto* and not *ex contractu*.
In the first case the court, after quoting what is now
Section 358, Or. L., said: "Public policy forbids that
the state shall be made a defendant in litigation with-
out its consent, and as counties are regarded as parts
of the government the exemption is in good reason
also extended to them, unless a statute exists ex-
pressly allowing the maintenance of actions against
them.   The right of action cannot be grounded upon
mere implication."   It was thus held that the effect
of Section 358, Or. L., was to exclude the maintenance
of an action for tort against a county.   In the last
case this court considered the effect of Section 10,
Article I of the Constitution of Oregon that "every
man shall have remedy by due course of law for in-
jury done him in his person, property or reputation,"
and disposed of the question by saying: "Until the
legislative department of the government shall pro-
vide that the state or its counties may be sued, in
an action of this sort, this constitutional provision
as to state governmental agencies must be treated as
not self-executing. * * As against a county the courts
cannot proceed under the quoted excerpt from the
organic act any further than the legislative power
has pointed the way.   In short, a county cannot be
called to account at the suit of a private party for
any default in its governmental functions unless there
is a statute allowing it."   The latest expression of
this court upon this subject is found in *Platt* v. *New-
burg*, 104 Or. 148, 163 (205 Pac. 296, 301), where it
was said: "The authorities reviewed establish that
the provision of the constitution upon which plaintiff
relies (§ 10, Art. I, Const.) has no application to a

case which involves the sovereign privilege of the
state and its subordinate agencies of immunity from
private action.''

3, 4. The constitutional guaranty that ''every man
shall have remedy by due course of law for injury
done him in his person, property or reputation'' we
think is self-executing and operates without the aid
of any legislative act or provision. It is one of the
most sacred and essential of all the constitutional
guaranties and without it a free government cannot
be maintained or individual liberty be preserved. Its
beneficent effect is always in operation and the guar-
anty itself never slumbers. It is therefore at all
times self-executing and requires no legislation to
put it into operation. It has, however, no application
to an action sounding in tort when brought against
the state or one of the counties of the state. In strict
law neither the state nor a county is capable of com-
mitting a tort or lawfully authorizing one to be com-
mitted. Counties, as well as the state, act through
their public officials and duly authorized agents. The
officers, agents, servants and employees of the state
or a county, while in the discharge of their duties, can
and sometimes do commit torts, but no lawful au-
thorization or legal justification can be found for the
commission of a tort by any such officer, agent, ser-
vant or employee. When a tort is thus committed,
the person committing it is personally liable for the
injury resulting therefrom. The wrongful act, how-
ever, is the act of the wrongdoer and not the act of
the state or county in whose service the wrongdoer is
then engaged. For the damages occasioned by the
wrong thus committed it is within the power of the
legislature to impute liability against the state or the
county in whose service the wrongdoer is then en-
gaged, or to exempt the state or county from such

liability, but in either event the wrongdoer is himself personally responsible. It is the remedy against the wrongdoer himself and not the remedy which may or may not be imposed by statute against the state or county for the torts of its officers or agents to which the constitutional guarantee applies. If an officer or agent of the state or county, having authority to act, does any act in a proper manner and in obedience to and conformity with a valid statute, neither the officer nor the state or county is liable for any injury resulting therefrom. But if such officer acts under an unconstitutional statute or in excess of his lawful authority, and an injury results therefrom, the officer is personally responsible to the injured party for the damage occasioned thereby. It is a familiar principle of law that "neither a state nor an individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator. In such cases the law of agency has no application—the wrongdoer is treated as a principal and individually liable for the damages inflicted and subject to injunction against the commission of acts causing irreparable injury." *Hopkins* v. *Clemson College*, 221 U. S. 636, 643 (55 L. Ed. 890, 35 L. R. A. (N. S.) 243, 31 Sup. Ct. Rep. 654, 656, see, also, Rose's U. S. Notes).

5. Plaintiff seeks to avoid the effect of the statute and of the decisions above alluded to by contending that the plaintiff may waive the tort and sue a county upon an implied contract and that the allegations of the complaint bring him within the rule contended for. An action in contract is for the breach of a duty arising out of a contract, either express or implied, while an action in tort is for a breach of duty imposed by law. For a breach of duty where there is no contractual relation, either express or implied, only an action in tort can be maintained.

6. Whether an action is in tort or in contract must be determined solely by the pleadings: 1 C. J., pp. 1013, 1015, 1016. The wrong complained of in the complaint is a tort and not a breach of contract, and under the allegations of this complaint there can be no election of remedies. The acts complained of are not subject to ratification or adoption by plaintiff, permitting him to waive the wrong and sue upon them as an implied contract.

7, 8. The gist of plaintiff's complaint is that the county, in its removal of the logs, trees and stumps from the piers of its bridge, wrongfully discharged them where they would be carried by the water upon plaintiff's land and come into contact with plaintiff's buildings, resulting in the washing away and destruction of the buildings and the contents thereof, and in a part of the logs, trees and stumps being deposited upon his land. From this transaction no benefit could arise to the county and no promise upon its part to pay for the damages resulting therefrom can be implied. Excluding from the complaint the allegation of wrongful acts, the complaint states no cause of action, and by its inclusion no action on contract can be predicated. Notwithstanding this, plaintiff contends that the law itself imposes an obligation upon the county to pay for the damages consequent upon the wrongful acts of its agents and employees. This conclusion would be correct if the action was against a private party, but as the statute prohibits the bringing of an action against a county for these acts, the law imposes no enforceable obligation upon the county to pay for the damages resulting therefrom.

Plaintiff also contends that the case comes within the rules announced in *Grant County* v. *Lake County,* 17 Or. 453 (21 Pac. 447), and in *State* v. *Baker*

*County,* 24 Or. 141 (33 Pac. 530), and *Theiler* v. *Tillamook County,* 75 Or. 214 (146 Pac. 828). In the first case alluded to, by an act of the legislature a portion of the territory which had formerly been a part of Grant County was cut off from Grant County and annexed to Lake County. The act itself provided that Lake County should pay to Grant County a proportionate amount of the indebtedness of Grant County. Lake County refused to pay and the action was brought to enforce the liability expressly created by the statute. In the second case, Baker County had failed to pay state taxes that were due and payable to the state, and the action was brought to recover the amount of the taxes due and unpaid. In the two cases last referred to, the court, after considering what is now Section 358, Or. L., in its effect upon actions brought against a county, held that independently of that statute, an action could be maintained under what is now Section 3191, Or. L. In both of those cases the liability sued on was a liability expressly created by statute. The obligation of Lake County to pay to Grant County its proportion of Grant County's indebtedness and the obligation of Baker County to pay the state taxes that it had collected pursuant to statute were obligations that the legislature had expressly imposed upon those counties. Therefore those actions could have been maintained even if neither Section 358 nor Section 3191, Or. L., had been enacted, as the authority for maintaining the actions against those counties could be found in other statutes. As no statute has created a corporate obligation on the part of Marion County to answer to any individual for the torts committed by its officers or agents, these cases do not support plaintiff's contention. The reasoning in the opinion in *Theiler* v. *Tillamook County, supra,* seems to lend

some support to plaintiff's contention, but what was there said in a case where the facts brought the case within the constitutional guaranty that private property shall not be taken for public use without just compensation, for the court in that case said: "It is believed that the analogy is sufficient to render a county liable in damages for a trespass upon private property when such invasion practically amounts to a taking of any part of the premises without condemnation."

Plaintiff also relies upon the cases of *Eastman* v. *Clackamas County*, 32 Fed. 24, and *Templeton* v. *Linn County*, 22 Or. 313 (29 Pac. 795), 15 L. R. A. 730, as authorities tending to sustain the contention that this case falls within the constitutional guaranty (§ 10, Art. I, Const.) that "every man shall have remedy by due course of law for injury done him in his person, property or reputation." The reasoning of the court in the first case supports plaintiff's theory, but this reasoning has not been adopted as the law of this state and the conclusion there reached by Judge DEADY was not necessary to the decision of that case as the accident there complained of happened before the amendment of what is now Section 358, Or. L., and as this amendment, as so held by Judge DEADY, did not have the effect to operate retrospectively, the remedy given by the statute as it existed prior to the amendment had not been defeated. In the latter case, notwithstanding the dissenting opinion of Mr. Justice LORD, the majority opinion held to the contrary of what is contended for here. In that case Mr. Chief Justice STRAHAN, among other things, said: "The liability created against a county by this statute, as it existed prior to the amendment in 1887, was recognized and enforced in *McCalla* v. *Multnomah*

*County,* 3 Or. 424, and the rule there stated continued to be recognized until the amendment. This is the first case arising under the statute as amended that has reached this court. There being no common-law liability, unless the statute has created a liability, there is none; and the statute having been repealed, there is none under the statute, if it were competent for the legislature to repeal it." That decision was concurred in by Mr. Justice BEAN who said: "If the legislature can constitutionally take away both the common law and statutory right of action against a municipal corporation for an injury received from a defective highway, it certainly can withdraw the statutory remedy against a county. The provision of the constitution under consideration in this case does not seem to have been noticed or considered by the courts in *O'Harra* v. *Portland,* but the result of that decision is fatal to plaintiff's contention here, and I am not prepared to say that such a conclusion, so far at least as the statutory right of action is concerned, is incorrect, and therefore concur in the result reached by the Chief Justice."

Whatever doubt may have existed by reason of the decisions referred to, that doubt has now been settled by the later decisions of this court in the cases above cited. The allegations of the complaint in the instant case make the action one purely in tort. There is no allegation of a taking of the property for a public use or upon which it can be contended that plaintiff's property was taken for a public use. "Public use implies a possession, occupation and enjoyment of the land by the public at large or by public agencies." Cooley, Const. Lim. (7 ed.), p. 766. In this case, under the allegations of the complaint, the county made no appropriation of plaintiff's land

110 Or.—26

nor has the county or the public used the same for any purpose beneficial to the county or the public. There was no intention upon the part of the county to subject the property or any part thereof to a public use, and no taking of the property resulted from the acts alleged. Under the allegations of the complaint, plaintiff sustained damage by reason of the release of the logs, trees and stumps after their removal from the piers at a place where they could flow across plaintiff's land instead of following the main channel of the river. The infliction of damages in the manner alleged, although resulting in the destruction of a part of plaintiff's property through the washing away of his buildings, if caused as contended for, and a deposit of a part of the logs upon his property, was not a taking of his property within the meaning of that term as used in the Constitution. The allegations of the complaint make the case one sounding in tort which would be actionable if the acts complained of had been committed by a private individual but are not actionable when charged to have been committed by the county. There was no allegation that plaintiff's land was caused to be flooded by the acts of the county or that any part of plaintiff's property was converted by the county, or that the county has received any benefit from the acts complained of. The acts done by the county were done without any intention to exercise the power of eminent domain or to take plaintiff's property or any part thereof for a public use, and there is nothing alleged from which a promise on the part of the county to pay plaintiff can be implied. As there was no statutory or constitutional authority for bringing this action against the county, the demurrer to the complaint was properly sustained. Hence, the judgment appealed from must be affirmed.     AFFIRMED.