624 March 3, 2016 No. 7

IN THE SUPREME COURT OF THE
STATE OF OREGON

Emily JOHNSON,
*Plaintiff,*

*v.*

Scott GIBSON
and Robert Stillson,
*Defendants.*

(US Court of Appeals Ninth Circuit 1335087;
SC S063188)

On certified questions from the United States Court of
Appeals for the Ninth Circuit; certification order dated April
24, 2015; certification accepted June 4, 2015.

Argued and submitted November 13, 2015.

Thane W. Tienson, Landye Bennett Blumstein LLP,
Portland, argued the cause and filed the brief for plaintiff.
With him on the brief was Christine N. Moore.

Harry Auerbach, Chief Deputy City Attorney, Portland,
argued the cause and filed the brief for defendants. With him
on the brief was Denis M. Vannier, Deputy City Attorney.

Kathryn H. Clarke, Portland, argued the cause and filed
the brief for *amicus curiae* Oregon Trial Lawyers Association.
With her on the brief was Shenoa L. Payne, Haglund Kelley
LLP, Portland.

Thomas W. McPherson, Mersereau Shannon, LLP,
Portland, filed the brief for *amici curiae* League of Oregon
Cities, Association of Oregon Counties, Citycounty Insurance
Services, Oregon School Boards Association, Special
Districts Association of Oregon, and The International
Municipal Lawyers Association.

Janet M. Schroer, Hart Wagner LLP, Portland, filed
the brief for *amicus curiae* Oregon Association of Defense
Counsel.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer and Nakamoto, Justices.*

WALTERS, J.

The certified questions are answered.

––––––––––––––
    * Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**WALTERS, J.**

This case is before the court on two certified questions from the United States Court of Appeals for the Ninth Circuit. *See* ORS 28.200 - 28.255 (providing for certification of certain questions of Oregon law from specified federal courts and appellate courts of other states to Oregon Supreme Court). As framed by the Ninth Circuit, the questions are (1) whether individual employees responsible for repairing, maintaining, and operating improvements on City-owned recreational land made available to the public for recreational purposes are "owner[s]" of the land, as that term is defined in the Oregon Public Use of Lands Act, ORS 105.672 to 105.700,[1] and therefore immune from liability for their negligence; and (2) if such employees are "owner[s]" under the Act, whether the Act, as applied to them, violates the remedy clause of Article I, section 10, of the Oregon Constitution.[2] We conclude that the individual employees in this case do not qualify as "owner[s]" under the Act, and that we need not address the second certified question.

This case arose when plaintiff, who is legally blind, was injured when she stepped into a hole while jogging in a public park in the City of Portland (the City). Plaintiff filed a complaint against the City and defendants Gibson and Stillson. Defendant Gibson had created the hole to fix a malfunctioning sprinkler head; he was a park technician with primary responsibility for maintenance of the park. Defendant Stillson was the maintenance supervisor for all westside parks in the City.

---

[1] ORS 105.672(4), which defines "owner" for purposes of the Act, was amended in 2009, and those changes went into effect January 1, 2010. Or Laws 2009, ch 532, § 1. Plaintiff alleges that her injuries occurred in July 2009. We therefore assume, as do the parties, that the Ninth Circuit's questions refer to the version of the statute in place at the time plaintiff's injuries occurred. That statute is ORS 105.672(4) (2007).

The current version of ORS 105.672(4) provides: "'Owner' means the possessor of any interest in any land, such as the holder of a fee title, a tenant, a lessee, an occupant, the holder of an easement, the holder of a right of way or a person in possession of the land."

[2] The remedy clause provides: "[E]very man shall have remedy by due course of law for injury done him in his person, property, or reputation." Or Const, Art I, § 10.

Plaintiff filed her complaint in federal district court, invoking federal claim and supplemental jurisdiction. Plaintiff alleged, under federal law, that the City had violated Title II of the American's with Disabilities Act (ADA), 42 USC sections 12131 to 12165, and, under state law, that all three defendants were liable for negligently causing her injuries. The City filed two motions: A motion to substitute itself as the sole defendant, pursuant to the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.302; and a motion for summary judgment.

The district court denied the City's motion for substitution. *Johnson v. City of Portland*, CV No 10-117-JO (D Or Feb 10, 2010) ("*Johnson I*"). The court reasoned that substitution of the City would violate the remedy clause in Article I, section 10, of the Oregon Constitution, because the City was immune from liability under the Public Use of Lands Act. Had the court substituted the City as the sole defendant in the case, the only defendant would have been immune and entitled to dismissal, leaving plaintiff without a remedy for her injury. *Id*.

The district court granted the City's motion for summary judgment, in part. The court granted the City summary judgment as to plaintiff's federal ADA claim, leaving plaintiff's negligence claim as her only remaining claim. The district court declined to retain supplemental jurisdiction over that state law claim and dismissed the case. *Id*.

Plaintiff then filed a new complaint in federal court invoking diversity jurisdiction. Plaintiff again alleged a state law negligence claim against defendants Gibson and Stillson, and those defendants again filed a motion to substitute the City as the sole defendant under the OTCA. In *Johnson II*, the district court agreed with the prior ruling in *Johnson I* that substitution of the City was not appropriate. *Johnson v. Gibson*, 918 F Supp 2d 1075, 1082 (D Or 2013). Then, the individual defendants filed a motion for summary judgment, contending that they were immune from liability under the Public Use of Lands Act. *Id*. at 1083. The district court agreed, reasoning that employees who maintain land qualify as "owner[s]" under that Act, and that defendants Gibson and Stillson were therefore immune from liability.

*Id*. at 1085. The court also held that the Public Use of Lands Act does not violate the remedy clause. *Id*. at 1088. The court granted defendants' motion for summary judgment. *Id*. at 1089. Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit, and the Ninth Circuit certified to this court the two questions now before us.

We begin with the first question posed and the text of the Oregon Public Use of Lands Act, which provides, in part:

> "Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes * * * when the owner of land either directly or indirectly permits any person to use the land for recreational purposes * * *. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes * * *."

ORS 105.682(1). "Land" is defined as "all real property, whether publicly or privately owned." ORS 105.672(3). "Owner" is defined as follows:

> "'Owner' means the possessor of any interest in any land, including but not limited to possession of a fee title. 'Owner' includes a tenant, lessee, occupant or other person in possession of the land."

ORS 105.672(4) (2007).

From that definition of "owner," defendants make a three-step argument: First, that the definition of the term "owner" is ambiguous and is not limited to those with a legal interest in the land; second, that, considered in its proper context, the term includes owners' employees and agents; and third, that as City employees, defendants are entitled to recreational immunity.

Defendants' argument focuses on the second sentence of the definition of "owner." Defendants recognize that they do not qualify as "owner[s]" under the first sentence of that definition because they do not have legal title to, or a legal right in, the property where plaintiff was injured. However, they contend, the second sentence in the definition

is broader, and it includes both persons who have a legal right in property—specifically, "tenant[s]" and "lessee[s]"—and those who do not—specifically, "occupant[s]" and those who are "in possession of the land." *Id*. According to defendants, the dictionary definitions of those latter terms demonstrate that "owner[s]" include persons without legal or equitable title to, or interest in, land.

A "possessor" is "one that possesses: one that occupies, holds, owns, or controls." *Webster's Third New Int'l Dictionary* 1770 (unabridged ed 2002). A "possessor" is also "one that holds property without title—called also *naked possessor*; contrasted with *owner*." *Id*. (emphasis in original). "Possession" means "the act or condition of having in or taking into one's control or holding at one's disposal"; "actual physical control or occupancy of property by one who holds for himself and not as a servant of another without regard to his ownership and who has legal rights to assert interests in the property"; "something owned, occupied, or controlled." *Id*. "Occupy" means "to hold possession of"; "to reside in as an owner or tenant." *Id*. at 1561. An "occupant" is "one who takes the first possession of something that has no owner"; "one who occupies a particular place or premises"; and "one who has the actual use or possession of something." *Id*. 1560.

Like defendants, we surmise, from those definitions, that the terms "occupant" and "person in possession of the land" may include persons without legal or equitable title to, or interest in, the land. But that is not the only lesson we take from those definitions. Like plaintiff, we conclude that those terms describe persons who do more than take up space on the land. Under those definitions, an "occupant," or a "person in possession of the land" must have some control over the space, and, given the context in which those terms are used, it is likely that the control that the legislature intended is the ability to decide who may use the space or what use may be made of it. The terms "occupant" and "person in possession of the land" are used in the same sentence as the terms "tenant" and "lessee." ORS 105.672(4) (2007). Tenants and lessees have the ability to decide who may use the space that they control and for what purposes. Under *noscitur a sociis*, a maxim of statutory construction that

tells us that the meaning of an unclear word may be clarified by the meaning of other words used in the same context, it is likely that the legislature intended that "occupant[s]" and "person[s] in possession of the land" have the same type of control as tenants and lessees. *See State v. McCullough*, 347 Or 350, 361, 220 P3d 1182 (2009) (so describing *noscitur a sociis*). Under that interpretation, only persons with authority to control and exclude from the land qualify as "owner[s]" of the land.

Further support for that interpretation is found in the context in which the term "owner" is used in the Act. The Legislative Assembly enacted the Public Use of Lands Act in 1971 "to encourage *owners* of land to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Or Laws 1971, ch 780, § 2, codified as *former* ORS 105.660 (1971), now codified as amended as ORS 105.676 (emphasis added). The immunities provided by the Act apply only if "[t]he *owner* makes no charge for permission to use the land." *Former* ORS 105.688(2)(a) (2007), *renumbered as* ORS 105.688(3) (2010) (emphasis added). An individual without a right to exclude others from the land or to otherwise control use of the land does not have the decision-making authority that the statute contemplates—the authority to make the land available to the public or to charge for permission to use the land.

Defendants do not point us to any statutory context or legislative history that indicates that the legislature understood the terms "occupant" or "person in possession of the land" in ORS 105.672(4) (2007) to support the unbounded meaning that defendants ascribe to those terms.[3] In fact, a case that defendants cite for a different proposition supports

---

[3] Defendants do argue that the main sponsor of the bill that led to the current version of the Act stated that it was "designed to be very broad" and to "guarantee [landowners] that they [would not] be paying out of pocket for *** allowing their property to be used." Tape Recording, House Committee on Natural Resources, Subcommittee on Agriculture and Forestry, HB 2296, Jan 30, 1995, Tape 4, Side A (statement of Rep Kevin Mannix). However, we do not find that general statement of purpose to be of assistance in determining the meaning of defined terms in the statute. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) ("[I]t is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]").

plaintiff's narrow interpretation of those terms. In *Elliott v. Rogers Construction*, 257 Or 421, 433, 479 P2d 753 (1971), the court considered the standard of care that applied to a contractor that was building a road for its principal. In discussing that issue, the court observed that "[c]ases from other jurisdictions and legal writers do not treat a contractor as an occupier of land." *Id*. at 432. In that case, the court was not interpreting the definition of "owner" in the Public Use of Lands Act, but its observation about the legal meaning of the word "occupant" is consistent with our interpretation of that word as being limited to individuals with a right to control and exclude from the land.

    In this case, defendants do not argue that they had a right to exclude others from the land or to otherwise control the use of the land. Rather, they argue that the definition of "owner" is so ambiguous that it requires us to look beyond the words of the definition to the context surrounding ORS 105.682, particularly the preexisting common law. *See Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004) (context includes preexisting common law). Defendants contend that an examination of that preexisting common law shows that the legislature must have intended "owner" to include persons who are employed by, or are agents of, persons who are more classically denominated as owners.

    Defendants argue that where land and property are concerned, the common law rule has long been that employees and agents have the same privileges and immunities as their principals. Defendants contend that, insofar as the legislature enacted and amended the Act in the context of that common law rule, it intended that that rule apply. Consequently, defendants assert, the legislature was not required to say explicitly what the common law already provides.

    For the common law rule on which they rely, defendants point to two Oregon cases—*Herzog v. Mittleman*, 155 Or 624, 632, 65 P2d 384 (1937); and *Elliott*, 257 Or at 432-33. In the first of those cases, *Herzog*, the court examined a guest passenger statute that provided that a guest in a vehicle would have no cause of action against the owner or operator for damages unless the accident was "intentional on the

part of [the] owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others." *Id*. at 628. The question presented was whether a vehicle owner's guest, who was operating the vehicle in question at the owner's invitation, would be protected by the same rule on the theory that he was acting as the owner's agent while driving the vehicle. The court looked to the *Restatement (First) of Agency* (1933) for assistance and began with section 343, which provides:

> "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interest."

*Id*. at 631 (internal quotation marks omitted). The court also looked to section 347 of the *Restatement*, which provides: "An agent who is acting in pursuance of his authority has such immunities of the principal as are not personal to the principal." *Id*. (internal quotation marks omitted). Finally, the court quoted comment a to that section:

> "a. Persons may have a personal immunity from liability with respect to all persons and for all acts, as in the case of a sovereign, or for some acts, as in the case of an insane person, or as to some persons as in the case of a husband to a wife. *** Unlike certain privileges such immunities cannot be delegated. On the other hand where an immunity exists in order to more adequately protect the interests of a person in relation to his property, the agent may have the principal's immunity. Thus, the servant of a landowner while acting in the scope of his employment is under no greater duties to unseen trespassers than is the landowner[.]"

*Id*. at 631-32 (internal quotation marks omitted) (omission in original).

Reasoning from those provisions, the court explained that although "it is well settled that an agent who violates a duty which he owes to a third person is answerable for the consequences thereof," if the agent is "acting within the authority, and pursuant to the direction of the principal, the agent is entitled to the same immunities as the principal would be had the principal done the same act under the

same circumstances and such immunities were not personal to the principal." *Id*. at 632. Applying that legal authority to the facts at hand, the court concluded that the standard of care set out in the statute was not personal to the principal—the car owner—but that it also extended to the agent—a guest that the owner had authorized to drive the car. *Id*. at 633. The court further concluded that the plaintiff could not recover from the defendant-agent without a showing that the defendant-agent was grossly negligent. *Id*.

In the second of the Oregon cases that defendants cite, *Elliott*, the court considered whether a contractor working on a landowner's property had the same limited duty of care to trespassers and licensees as did the landowner. 257 Or at 431-33. In that case, an employee of a construction company that was building a road for the State Highway Department accidentally injured a pedestrian who was crossing a portion of the road that had not yet been opened to the public. *Id*. at 424. The court explained that, "[b]eing 'clothed with the rights of the owner,' [the construction company] was only under a duty to the plaintiff's decedent to abstain from inflicting injury willfully or by active negligence." *Id*. at 433. Because the plaintiff had alleged that the company's employee had acted with wanton misconduct, however, the court held that the lawsuit could proceed. *Id*. at 434-35. Thus, without discussing the issues in the same terms used in the *Restatement (First) of Agency*, the court implicitly concluded that the standard of care applicable to the landowner was not personal to the landowner, but that it also extended to the landowner's agent.

In this case, defendants' reliance on *Herzog* and *Elliott* is misplaced. Defendants draw general conclusions from the results in those cases without recognizing the distinction that is explicit in *Herzog* and implicit in *Elliott*— that is, the distinction between immunities that are personal to the principal and those that may extend to a principal's agent. Immunities provided to a principal may, but do not always, extend to the principal's agents. That is clear not only from the comment to the *Restatement* quoted above, but also from a line of Oregon cases to which plaintiff calls our attention. In those cases, this court considered whether the

sovereign immunity of governmental landowners preclud-
ing their liability for defective conditions on their streets
extends to agents responsible for the repair of those streets.
The first case in which the court contemplated that issue
was *Mattson v. Astoria*, 39 Or 577, 65 P 1066 (1901).

In *Mattson*, the plaintiff was injured as a result of
the city's failure to keep a public street in repair and suit-
able for travel. *Id.* at 578. The plaintiff challenged a clause
of the city charter that exempted the city and members of its
council from liability for such failure. *Id*. The court said the
following:

> "That it is within the power of a legislature to exempt a
> city from liability to persons receiving injuries on account
> of streets being defective or out of repair, is unquestioned.
> * * * But in such case the injured party is not wholly without
> remedy. He may proceed personally against the officers to
> whom the charter delegates the duty of keeping the streets
> in repair, and from whose negligence the injury resulted."

*Id.* at 579. Since *Mattson,* the court has consistently recog-
nized that the liability of a local government as landowner
is distinct from the liability of employees and agents of the
government. For instance, in *Gearin v. Marion County*, 110
Or 390, 396-97, 223 P 929 (1924), the court explained:

> "The constitutional guaranty that 'every man shall
> have remedy by due course of law for injury done him in
> his person, property or reputation' we think is self-execut-
> ing and operates without the aid of any legislative act or
> provision. * * * It has, however, no application to an action
> sounding in tort when brought against the state or one
> of the counties of the state. In strict law neither the state
> nor a county is capable of committing a tort or lawfully
> authorizing one to be committed. Counties, as well as the
> state, act through their public officials and duly authorized
> agents. The officers, agents, servants and employees of the
> state or a county, while in the discharge of their duties, can
> and sometimes do commit torts, but no lawful authoriza-
> tion or legal justification can be found for the commission
> of a tort by any such officer, agent, servant or employee.
> When a tort is thus committed, the person committing it
> is personally liable for the injury resulting therefrom. The
> wrongful act, however, is the act of the wrongdoer and not

the act of the state or county in whose service the wrong-doer is then engaged. For the damages occasioned by the wrong thus committed it is within the power of the legislature to impute liability against the state or the county in whose service the wrongdoer is then engaged, or to exempt the state or county from such liability, but in either event the wrongdoer is himself personally responsible. It is the remedy against the wrongdoer himself and not the remedy which may or may not be imposed by statute against the state or county for the torts of its officers or agents to which the constitutional guarant[y] applies."

*See also Rankin v. Buckman, et al.*, 9 Or 253, 259-63 (1881) (city employees liable even when city is not).

From those cases, it appears that whether a principal's immunity is personal to the principal or may extend to an agent is a matter of legislative choice subject to constitutional bounds. We presume that the legislature was aware of that existing law. *Blachana, LLC v. Bureau of Labor and Industries*, 354 Or 676, 691, 318 P3d 735 (2014). In addition, the *Restatement (Second) of Agency* section 347(1) (1958), which had been published by the American Law Institute when the legislative assembly enacted the Oregon Public Use of Lands Act in 1971, is in accord. It provides that "[a]n agent does not have the immunities of his principal although acting at the direction of the principal." *Id*. *Restatement* section 347 comment a clarifies: "Immunities exist because of an overriding public policy which serves to protect an admitted wrongdoer from civil liability. They are strictly personal to the individual and cannot be shared." Subject to constitutional limitations, the legislature must determine as a matter of public policy how broadly to extend immunities.

Consequently, we conclude that when the legislative assembly enacted the Public Use of Lands Act, legislators would not necessarily have assumed that granting immunity to landowners would also grant immunity to their employees and agents. The legal principles that the court had previously applied, as well as the common law rules reflected in the restatements, recognized that the grant of immunity to a principal, particularly to a governmental principal, would not necessarily extend to the employees and agents of the

principal. Whether a court would imply such an extension could depend, for instance, on whether the court considered the grant of immunity personal to the principal, or whether extension of immunity to an agent would eliminate a remedy that the Oregon Constitution requires.

In this case, in deciding whether to imply an extension of the immunity granted to "owner[s]" of land to their employees and agents, we first consider the statute's text. Significantly, that text indicates that the legislature intended to extend the immunity of those who hold legal title to land to some others who stand in their stead—the owners of other lesser interests in land, including tenants and lessees, and those who qualify as "occupant[s]" or "person[s] in possession" of the land. The text does not, however, disclose a legislative intent to extend the immunity of owners to additional persons who stand in their stead, such as employees and nonemployee agents.

Second, we look to the statute's context and legislative history and note that, when it was originally enacted in 1971, the Act was supported by owners of forestland who wished to open their lands to the public for recreational uses such as hunting and fishing. Testimony, Senate Committee on State and Federal Affairs, SB 294, Mar 1, 1971 (written statement of Sam Taylor, a proponent of the bill). When originally enacted, the Act provided that "[a]n owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose." Or Laws 1971, ch 780, § 3. Thus, it appears that the legislature's original intent was to relieve those who control the use of their land from responsibility to take affirmative steps to make their property safe for use by others; the legislature did not express an intent to benefit those who do not have the ability to make decisions about the use of land, or to relieve non-owners who commit negligent acts from responsibility for injuries caused by such acts.

The legislature amended the Act in 1995 to make it expressly applicable to public landowners. Or Laws 1995, ch 456, § 1. However, neither that change nor other changes

in the wording of the statute disclose an intent to change the purpose of the statute or to benefit additional classes of persons. Importantly, the legislature did not materially change the definition of owner in 1995. The 1971 Act provided that an "owner" is "the possessor of a fee title interest in any land, a tenant, lessee, occupant or other person in possession of the land." Or Laws 1971, ch 780, § 1. In 1995, the legislature broke the definition into two sentences and changed the phrase in the first sentence from "possessor of a fee title interest in any land" to "possessor of any interest in any land." Or Laws 1995, ch 456, § 1. However, the legislature did not change the categories of persons to whom it granted immunity; in 1995, the legislature exempted the same persons from liability that it had exempted in 1971. When the legislature made the Public Use of Lands Act expressly applicable to public landowners in 1995, it did not demonstrate an intent to broaden the Act to benefit those who do not have the ability to make decisions about the use of land, or to relieve non-owners who commit negligent acts from responsibility for injuries caused by such acts.

Defendants argue, however, that other statutory context points in that direction. Defendants call our attention to the fact that just four years earlier, in 1991, the legislature had amended the OTCA to provide that a claim against a public body is the sole remedy for the torts committed by employees of that public body. Or Laws 1991, ch 861, § 1. Defendants contend that, in light of that amendment, the Public Use of Lands Act must be read to shield governmental employees and agents; otherwise, the immunity it grants to governmental landowners would mean nothing. We disagree. The Public Use of Lands Act applies not only to public landowners, but also to private landowners. Just as it did before the amendment of the OTCA, the Public Use of Lands Act protects all "owner[s]" from liability in their capacity as "owner[s]." Just like private owners, public owners are exempt from liability for their own acts. The fact that public owners are not, in addition, exempt from liability for the acts of their employees or agents does not make the immunity granted by the Public Use of Lands Act illusory. The fact that public owners, like private owners, are not shielded from liability if they employ nonowners who cause injury to

others in the negligent performance of their duties does not mean that the Public Use of Lands Act has no purpose.

The legislature knows how to extend immunity to governmental employees and agents when it chooses to do so. *See* ORS 368.031 (immunizing counties and their officers, employees, or agents for failure to improve or keep in repair local access roads); ORS 453.912 (immunizing the state and local government and their officers, agents and employees for loss or injury resulting from the presence of any chemical or controlled substance at a site used to manufacture illegal drugs); ORS 475.465 (immunizing the state, DEQ, EQC, and their officers, employees, and agents from liability to a person possessing chemicals at alleged illegal drug manufacturing site).[4] The legislature did not make that express choice in the Public Use of Lands Act. Should the legislature wish to extend the immunity provided to "owner[s]" to governmental employees and agents, it is free to do so, within constitutional bounds. However, we are unwilling to insert into the definition of "owner" in ORS 105.672(4) (2007) terms that the legislature did not include. *See* ORS 174.010 (office of judge is to ascertain what is contained in statute, not to insert what was omitted or to omit what was inserted).

We answer the Ninth Circuit's first certified question as follows: Individual employees responsible for repairing, maintaining, and operating improvements on City-owned recreational land made available to the public for recreational purposes are not "owner[s]" of the land, as that term is defined in the Oregon Public Use of Lands Act. They are therefore not immune from liability for their negligence. We do not reach the second certified question concerning Article I, section 10, of the Oregon Constitution.

The certified questions are answered.

---

[4] Another example, although enacted after the Public Use of Lands Act, is a 2011 statute that grants immunity relating to public trails. ORS 105.668(2) immunizes a "city with a population of 500,000 or more" and its "officers, employees, or agents" from liability for injury or damage resulting from the use of a trail or structures in a public easement or an unimproved right of way.