Submitted July 9, 2019, affirmed April 1, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COLBY LEE POSEY,
*Defendant-Appellant.*

Coos County Circuit Court
17CR50877; A166797

463 P3d 551

Defendant appeals a judgment of conviction for failure to report as a sex offender, ORS 163A.040(3)(a). He assigns error to the trial court's denial of a motion to suppress evidence of that charge, arguing that police discovered the evidence during an unlawful traffic stop. An officer had pulled defendant over for failure to obey the traffic control device of a stop sign, ORS 811.265 and ORS 811.260(15), after observing defendant stop his car with the front tires resting on the stop line and the front of the car extending beyond it. Defendant contends that, because the statute only requires a driver to stop "at" the line, and not before it, the officer lacked probable cause to initiate the traffic stop as Article I, section 9, of the Oregon Constitution requires. *Held*: The stop-sign provision of ORS 811.260 requires vehicles to cease movement before crossing over the stop line.

Affirmed.

Martin E. Stone, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Peenesh Shah, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

DeVORE, J.

Affirmed.

**DeVORE, J.**

Defendant appeals a judgment of conviction for failure to report as a sex offender, ORS 163A.040(3)(a). He assigns error to the trial court's denial of a motion to suppress evidence related to that charge, arguing that police discovered the evidence during an unlawful traffic stop. An officer had pulled defendant over for failure to obey a stop sign, ORS 811.265 and ORS 811.260(15), after observing defendant stop his car with the front tires on the stop line. Defendant contends that, because the statute only requires a driver to stop "at" the line, and not before it, the officer lacked probable cause to initiate the traffic stop as Article I, section 9, of the Oregon Constitution requires.[1] We conclude that the stop-sign provision unambiguously requires vehicles to cease movement before crossing the stop line. Accordingly, we affirm.

We review the trial court's legal conclusions regarding a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). The facts relevant to this case are undisputed. Oregon State Trooper James Jarrell was driving on the highway when he began driving behind defendant's car. Jarrell observed defendant turn off of the highway and commit what Jarrell believed to be multiple traffic infractions. Jarrell followed defendant. Soon after, the vehicles approached a stop sign. Defendant stopped with the front tires of his car on the stop line and the front of the car's body over it. Jarrell believed defendant had failed to obey a traffic control device, ORS 811.265 and ORS 811.260(15).[2] He pulled defendant over and, during the stop, discovered evidence of the crime of failing to report as a sex offender.

Based on that evidence, the state charged defendant with failing to report as a sex offender. Defendant filed a motion to suppress evidence related to that charge, arguing that the underlying traffic stop which led to its discovery

---

[1] Article I, section 9, of the Oregon Constitution provides, in relevant part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

[2] Jarrell also stopped defendant for another possible infraction. Because we conclude that the officer had probable cause, at the very least, to stop defendant for failing to stop at the stop sign, we need not address whether the officer otherwise had probable cause under the other statutes.

was unconstitutional. Defendant asserted that the traffic stop was an unlawful seizure under Article I, section 9, of the Oregon Constitution because Jarrell lacked probable cause to justify it, and that the evidence obtained during that stop was therefore inadmissible. The state countered that Jarrell had probable cause to believe that defendant failed to obey the stop sign when defendant's vehicle crossed over the stop line before ceasing movement. The trial court agreed with the state on that issue and denied defendant's motion. Defendant entered a conditional guilty plea which preserved his right to appeal the trial court's ruling on his motion to suppress.

Defendant assigns error to the trial court's denial of his motion to suppress the evidence discovered during the traffic stop. He renews his argument that Jarrell lacked probable cause to permit the stop in the first instance. Defendant and the state disagree as to whether what Jarrell observed could constitute a violation of failure to obey a traffic control device, ORS 811.265. Specifically, the dispute centers around the question of what ORS 811.260(15) requires of drivers at stop signs, and whether defendant met those requirements.

Oregon law makes it an offense when a driver "fails to obey any specific traffic control device described in ORS 811.260 in the manner required by that section." ORS 811.265(1)(b). That cross-referenced statute, in turn, provides,

> "Stop signs. A driver approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the marked crosswalk on the near side of the intersection or, if there is no marked crosswalk, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it."

ORS 811.260(15). Defendant highlights that ORS 811.260(15) only requires the driver to stop "at" the clearly marked stop line. He argues that the dictionary defines the word "at" as "presence in, on, or near," and thus, consistent with the word's plain meaning, the car stopped "at" the stop line when it stopped on or near the line. Defendant claims that,

if the legislature intended to require a driver to stop before the stop line, it would have explicitly stated so, and that the use of the word "at" illustrates the intention to "grant some leeway" to drivers. As a result, he concludes, he abided by the statute when he stopped with his vehicle's tires on the stop line.

The state responds that a driver violates ORS 811.260(15) when the front of his vehicle passes the stop line before coming to a halt. The state argues that, if the word "at" meant near, the definition would be too vague to meaningfully follow or enforce, or to achieve the Oregon Vehicle Code's stated purpose of providing "maximum safety for all persons who travel or otherwise use the public highways of this state" under ORS 801.020(11). The state contends that the context of the statute shows that the word "at" cannot mean near. It notes that the word is used in connection with a line "that is otherwise drawn in very precise terms." The state explains that the statute provides three scenarios involving a stop sign: (1) a marked stop line, (2) a marked crosswalk with no marked stop line, and (3) no marked stop line or crosswalk. The state argues that the law operates similarly in each instance and that, because it requires a vehicle to stop "before entering" the intersection in the other scenarios, it requires the same when the stop line is marked. Accordingly, the state concludes, a violation occurs if any part of the vehicle enters the area past the stop line, and therefore defendant violated the law.

The parties' arguments raise a question of statutory construction. We must discern what the legislature meant by the phrase "*at* a clearly marked stop line" (emphasis added). When determining the meaning of the statute, we give the greatest weight to its text and context. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (outlining the methodology). We may also look, as necessary, to pertinent legislative history. *Id.*

In this case, the text, when considered in the context of the entire statutory provision, demonstrates that the state's view is correct. *See Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008) ("When we examine the text of the statute, we always do so in context, which includes,

among other things, other provisions of which the disputed provision is a part."). The meaning of the word "at" is clarified by reference to other words in the same sentence. *See Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016) (discussing *noscitur a sociis* textual canon and noting that "[i]t is a familiar rule that the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision"); *see also Johnson v. Gibson*, 358 Or 624, 629-30, 369 P3d 1151 (2016) ("[T]he meaning of an unclear word may be clarified by the meaning of other words used in the same context."). That sentence explains what it means to obey a stop sign. It offers multiple methods for determining where the stopping point is, depending on the road markings. All explain the same requirement: stopping at the stop sign. In addition to stopping "at a clearly marked stop line," the sentence explains, obeying the stop sign means ceasing movement "before entering" the area beyond the line, whether that line is marked (crosswalk) or unmarked (intersecting roadway). The legislature likely intended stopping "at" a marked stop line to have the same meaning as stopping otherwise described in the same sentence, that is, "before entering" the area beyond that line.

The legislative history of ORS 811.260(15) also suggests that the requirements for obeying stop signs are uniform, regardless of road markings. Notably, it indicates that the legislature intended to create one line at which drivers must stop and that the line that it established was one upon which vehicles could not encroach. Lawmakers enacted the stop-sign statute in 1975, as part of a broader motor vehicle code revision. *See* Or Laws 1975, ch 451, § 37 (enacting ORS 487.255, *repealed by* Or Laws 1983, ch 338, § 978).[3] The drafters of that provision recognized that Oregon was among a minority of states that had no law setting out where to stop at a stop sign. Tape Recording, Joint Committee on Judiciary, Subcommittee on Revision, Oregon Vehicle Code Preliminary Draft No. 1, Feb 6, 1974, Tape 8, Side 1 (Statement of Marion Embick, Research Counsel). They wanted to create "a clearly delineated line" at which vehicles

---

[3] The provision became ORS 811.260 in 1983, after a subsequent reorganization of the motor vehicle code. Or Laws 1983, ch 338, § 609.

must stop, as well as to articulate the ways that drivers could find that line.[4] *Id.* Thus, the stop-sign provision's main goal was to establish a clear and precise expectation for where drivers must stop. Although the provision included multiple *methods* for ascertaining that stopping point, the drafters expressed no intention of varying the stopping point itself.

The drafters also indicated an intention to apply a standard to stop lines similar to that for crosswalks and intersecting roadways. They cited with approval the Suggested Uniform Traffic Ordinance, prepared in cooperation with the League of Oregon Cities, acknowledging it as a contribution to the stop-sign law. *Id.* That suggested ordinance stated:

> "Where a stop sign is erected at or near the entrance to an intersection, the operator of a vehicle approaching shall run the vehicle to a stop *before* crossing the stop line or crosswalk or, if none, then before entering the intersection."

*Id.* (emphasis added). That discussion suggests that, although the stop-sign provision only tells drivers to cease movement "before entering" crosswalks or intersecting roadways, the drafters likewise envisioned that drivers would cease movement *before* crossing stop lines.

In sum, we conclude that the stop-sign provision imposes the same requirement on drivers at stop signs regardless of the marking on the road; vehicles must cease movement before proceeding to the area beyond the stop line, crosswalk, or intersecting roadway. When Jarrell observed defendant's vehicle cross over the stop line before coming to a halt, he had probable cause to believe that defendant had committed the traffic infraction of failing to obey the traffic control device of a stop sign. The officer's traffic stop was

---

[4] To that end, the drafters adopted the language of the Uniform Vehicle Code, which nearly mirrors today's statute. Section 11-403 of the Uniform Vehicle Code provided:

> "[E]very driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it."

Commentary to Preliminary Draft No. 1, Part I, Article 4, Joint Committee on Judiciary, Subcommittee on Revision, Oregon Vehicle Code, Feb 6, 1974.

lawful under Article I, section 9, of the Oregon Constitution. For that reason, the trial court did not err in denying defendant's motion to suppress evidence discovered during that stop.

Affirmed.